RALPH MEYER, Individually as a Taxpayer of the Town of Thompson and as Supervisor of the Town of Thompson, Respondent, *v.* BERNARD WIESS, as President of the Board of Trustees of the Sullivan County Community College, et al., Appellants, and MORTIMER MICHAELS, as Chairman of the Board of Supervisors of the County of Sullivan, et al., Respondents.

Third Department, March 28, 1966.

*Lazarus I. Levine* and *Joseph F. Willis* for appellants.

*Herman A. Machson* for Ralph Meyer, respondent.

*Carl P. Goldstein* and *David Farber* for Mortimer Michaels and others, respondents.

GIBSON, P. J. Appeal is taken by defendants chairman and secretary of the board of trustees (hereinafter the " college board ") of Sullivan County Community College from so much of an order and judgment of the Supreme Court at Special Term

as granted declaratory judgment that the said college board's purported acceptance of gifts of real property at Loch Sheldrake was ineffective to designate it the site of said college; and that no permanent site for said college can be established without the consent and approval of the Board of Supervisors (hereinafter the "county board") of Sullivan County, that county being the sponsor of the college. The college board had assumed authority to select a site and to accept gifts of land therefor, without the consent of the county.

Initially, however, the college board proceeded on the assumption that the consent of the county board was required, and thus the college board approved the so-called Dillon site, expressly subject to the condition that the site be approved by the county board; but thereafter and before the county board had acted, the college board rescinded its action, and thereafter approved the so-called Loch Sheldrake site, the resolution "respectfully requesting [the board of supervisors] to approve and accept the same". In each case the premises were offered as gifts and, additionally, in each case, substantial cash gifts, conditioned on the acceptance of the particular site, were promised. Subsequently, and with no intervening action by the county board, the college board, by resolution, directed that deeds of the Loch Sheldrake properties be accepted "forthwith" and be recorded "without delay". Four deeds were thereupon recorded, each running to the "County of Sullivan", as party of the second part, grantee, and each containing a provision, following the description of the property conveyed, that "title * * * shall vest in and be held by the party of the second part, in trust, for the uses and purposes of the Sullivan County Community College." The county board, however, rejected this site and directed that all the parcels be reconveyed to the grantors. This action for declaratory judgment followed.

The case is one of first impression as there has previously been no judicial construction of the governing statutes (Education Law, § 6304, subd. 2; § 6306, subd. 4), which provide respectively as follows:

"Community colleges shall be empowered and authorized through their boards of trustees, to accept gifts, grants, bequests and devises absolutely or in trust for such purposes as may be appropriate or proper for effectuating the programs and objectives of such colleges." (Education Law, § 6304, subd. 2.)

"The board of trustees of each community college may acquire by deed, gift, devise, bequest or lease, real or personal property suitable for carrying out the program and purposes

of the college, and pursuant to regulations prescribed by the state university trustees may apply any income that may be derived therefrom to the maintenance thereof; but no lands, grounds, buildings, facilities or equipment shall be purchased or leased unless an appropriation has been made, therefor, or unless otherwise authorized by law. Title to personal property so acquired shall vest in such board of trustees in its own name and such property shall be held and used by such board for college purposes. Title to real property so acquired shall vest in and be held by the local sponsor in trust for the uses and purposes of the community college. The use of real or personal property given to the board of trustees of any community college, or of the income therefrom, to provide any part of the local sponsor's share of capital or operating costs shall be subject to the consent of the state university trustees and such regulations as they may prescribe.'' (Education Law, § 6306, subd. 4.)

Thus, the subdivision first quoted (§ 6304, subd. 2) seems unconditionally to permit the college board to accept gifts of property, and that last quoted (§ 6306, subd. 4) requires that no such property shall be '' purchased * * * unless an appropriation has been made, therefor '' and, further, that '' Title to real property so acquired [by gift] shall vest in and be held by the local sponsor in trust for the uses and purposes of the community college.''

Appellants contend, simply enough, that since the property was not '' purchased '', no '' appropriation '', and hence no consent, was necessary. Special Term considered that since the sponsor of every community college must appropriate 50% of the cost of construction and 33⅓% of the cost of operation and must approve the college budget, and since the sponsor would have to appropriate the cost of a site, and hence control its selection, if no site were donated, logic impelled the conclusion that the sponsor's approval was required in both situations.

From the provisions of article 126 of the Education Law, whereby community colleges are authorized to be established, it is evident that the board of trustees is of strictly limited authority; and that from the moment of organization the county board, which must appoint five of the nine members of the college board (§ 6306, subd. 1), is the dominant member of the partnership. The college board is charged (subject in most cases to the regulations of the State University Trustees) with supervision of the academic functions of the college, including internal administration, in some areas by mandatory delegation of power to the president of the college; is charged, also, with

the adoption of curricula and the preparation of budgets, subject, however, to the approval of the State University Trustees in one case and to that of the local legislative body of the sponsor in the other; and, additionally, is charged with the care and management of the lands, grounds, buildings, facilities, equipment and other property used for purposes of the institution. (Sec, e.g., § 6301, subd. 2; § 6306, subds. 2, 5.)

It is equally, and abundantly clear from an over-all consideration of the various pertinent provisions of article 126 that the county, the local sponsor, is given, and required to exercise firm and close control of the financial structure of the college and its fiscal operations, as respects both capital and income transactions.

The local sponsor must provide one half of the amount of capital costs and one third of the amount of operating costs, these payments being matched by State financial aid in the same proportions (§ 6304, subd. 1, pars. a, b). When the local sponsor shall provide all or a portion of its share of capital or operating expenses in real or personal property, the valuation thereof for the purpose of determining the amount of State aid " shall be made by the state university trustees with the approval of the director of the budget " (§ 6304, subd. 1, par. b). This provision is obviously co-ordinated with that contained in the last sentence of subdivision 4 of section 6306, hereinbefore quoted in full, to the effect that the use of gifts to the college board of real or personal property constituting part of the local sponsor's contribution to the project shall be subject to the consent of the State University Trustees and their regulations. Thus, at the very outset, there becomes evident the county board's significant, if not vital interest in the acceptance of a gift which, upon the appraisal of two other authorities, will become a measure, first, of the local sponsor's contribution and, second, of the State's corresponding liability; *and, additionally, will become the basis of annual appropriations by the county board in future.* A donation does not always confer a benefit upon the donee. A gift of the white elephant variety may, indeed, for any of a number of reasons impose upon the recipient an intolerable burden of liability and expense; or be so badly located or so ill-adapted to its intended use and purpose as to render wasteful and foolish the expenditures necessary to its maintenance and operation.

Examining further into the statutory scheme, we note that the county board's all-pervasive and inclusive control in matters of capital and of capital finance, as indeed of income, is repeatedly indicated in the provisions of article 126; as in that directing preparation of the budget by the college board " *for submission*

*to and approval by* " the Board of Supervisors (§ 6306, subd. 2; emphasis supplied); in the provision that contracts or agreements " deemed necessary or appropriate for the effective operation of the college " may be entered into by the board of trustees, *subject to the approval of the sponsor* and to regulations and limitations by the State University Trustees (§ 6306, subd. 7); in the direction that financial assistance granted to the college by the State shall be paid *to the sponsor* (§ 6302, subd. 3); in the authority granted to the county board with respect to the issuance of bonds and notes (§ 6304, subd. 1, par. b); and in the provisions for close control by the county board of all financial transactions, by audit, regulation and various other means, extending even to petty cash funds of not to exceed $200 each (§ 6304, subds. 5, 6; § 6302, subd. 3). The Legislature's clear intent, implicit in its commitment to the local sponsor of full responsibility for financial supervision, complete to seemingly the most minor details, would be frustrated by the enforced acceptance of gifts to become part of the capital structure contemplated to be erected by the county board, and, as respects development of the site and its future maintenance, the subject of present and future appropriations, responsibility for which was entrusted solely to the county board's discretion and good judgment, which would now be fettered and confined. It follows that, in order to effectuate the legislative mandate, the acceptance of this proffered accretion to the capital of the college and the consequent encumbrance of future revenues from appropriations must, in combination at least, be held to infringe upon the authority of the county board and to be without the ambit of the college board's authority.

A more direct approach to the solution of the problem, and an equally solid basis for affirmance of the Special Term's decision, may be found in the provision that although title to personal property acquired by gift shall vest in the college board, " Title to real property so acquired shall vest in and be held by the local sponsor in trust for the uses and purposes of the community college." (Education Law, § 6306, subd. 4.) No basis can be found in the record before us for a determination that the county was under any compulsion to accept the purported deeds, contrary to its will, as manifested by its legislative body, or to recognize the unauthorized recordation of those documents. A statute intended to require any person or other entity to become vested with the title to unwanted realty and to accept any attendant obligations and responsibilities, at the will, or the whim, of another, would have to be more clearly framed than the act before us. Thus, we also find reasonable the con-

clusion that effective control over the site of the college rests with the county board, since it is a governmental subdivision, and as such the college board's sponsor, and is also the only entity empowered by the Legislature to hold the real property.

In dealing, as we have done, with the instance of an attempted gift of realty for a permanent college site, presumably to require appropriations for its development and, certainly, annual appropriations for its maintenance in future, we express no opinion as to the procedure necessary to the acceptance of gifts of realty for other purposes, as, for example, gifts of self-sustaining or marketable real estate to be held for purposes of investment or for conversion to cash. Neither, of course, does our appraisal of the relationship between the local bodies — college and county — nor our conclusion as to the dominance of the latter in matters fiscal, touch upon the position of either body vis-a-vis authority at the State level, and the State University Trustees in particular.

The order and judgment should be affirmed, without costs.

REYNOLDS, TAYLOR, AULISI and HAMM, JJ., concur.

Order and judgment affirmed, without costs.