Stanley **FEINGOLD**, Plaintiff

v.

Joseph N. **HANKIN**, individually, personally, and in his Capacity as President of Westchester Community College, Harry Phillips, III, individually, personally, and in his Capacity as Chairman of the Trustees of Westchester Community College and Thomas S. Carey, personally, and in his Capacity as Chairman of the Trustees of Westchester Community College, and Westchester Community College, Defendants

No. 02 CV 4453(CM)(GAY).

United States District Court, S.D. New York.

June 10, 2003.

AMENDED MEMORANDUM
DECISION AND
ORDER [1]

McMAHON, District Judge.

Plaintiff Stanley Feingold brings causes of action for declaratory judgment and damages based on theories of unjust enrichment and negligent misrepresentation against Westchester Community College (WCC) as well as Joseph N. Hankin, Harry Phillips, III, and Timothy S. Carey, individually and in their capacity as President and Trustees, respectively, of WCC. Plaintiff alleges in substance that WCC and the individual Defendants owe him money in lieu of a pension, which they

**1.** Amendment to title only. No text of the original decision, issued May 5, 2003, is altered by this amendment.

were precluded by state law from offering him. (*See* Compl. ¶ 5 appended to Arcuri Decl. as Ex.A.)

Defendants move to dismiss the complaint in its entirety pursuant to Fed. R.Civ.P. 12(b)(1),(2),(5), (6) and (7) asserting that this Court lacks subject matter jurisdiction over Plaintiff's claims and personal jurisdiction over the Defendants, that the Plaintiff has failed to state a claim on which relief can be granted, and that the claims are time barred. (Mot. to Dismiss.) For the reasons stated below, I find that Plaintiff failed to properly serve Westchester County (the real party in interest to named defendant Westchester Community College). As a result, I defer further discussion on the merits of Plaintiff's claim until all parties have been properly served. However, I provide the full background of Plaintiff's claims now, in order to provide context to the jurisdictional argument and to facilitate issuance of a decision on the merits immediately after Plaintiff has effected proper service.

## BACKGROUND

The following facts are undisputed, unless noted.

From 1948 until 1982, Professor Feingold was a well-regarded member of the faculty of the City College of New York (City College). He advanced to the position of Associate Professor in the Department of Political Science.

Throughout his thirty four years at City College, Professor Feingold was enrolled in and made contributions to the New York City Teacher's Retirement System (TRS.) (Notice of Pet. ¶ 3, appended to Arcuri Decl. as Ex. B.)

In 1982, pursuant to the recommendation of the College Search and Screen Committee, Defendant Joseph N. Hankin, President of WCC, offered Professor Fein-gold the newly created position of Cultural Coordinator at WCC. The job was designed to take advantage of both the Plaintiff's skills as a professor and his experience in creating community arts programs within Westchester County. (*Id.* at ¶ 4.) According to the Complaint, part of the enticement to lure Professor Feingold from his secure position at City College involved "a series of promises and representations (which continued to his retirement)" including a promise that he would be eligible to accrue pension benefits during his tenure at WCC through one of the several pension plans available to state employees. (Compl. ¶¶ 8,9, and 11; Notice of Pet. ¶ 4)) Plaintiff alleges that he was promised a pension, *or equivalent compensation,* so that upon retirement he would be on a par, economically, with other WCC retirees of similar tenure and experience. He does not allege that this promise was made to him in writing. Plaintiff accepted the position at WCC, retired from his position at City College, and began drawing the pension that he had earned under the TRS program while at City College.

After starting his new job, Professor Feingold, through WCC, enrolled in and began making payments to the Teacher Insurance and Annuity Association (TIAA), a private pension agency separate from TRS. (Notice of Pet. ¶ 5.) In 1983, Professor Feingold and WCC learned that he could not collect benefits under his City College pension and simultaneously accrue benefits under a new pension plan. Under §§ 211 and 213 of Article 7 of the Retirement and Social Security Law (Retire. & Soc. Sec.), a retired public employee may be re-employed by another government without diminishing his or her rights in an existing pension. However, the employee is prohibited from joining another pension program while collecting the pension from the old job. Because Professor Feingold was receiving payments from his TRS pen-

sion, he was ineligible to accrue pension benefits under TIAA. (Notice of Pet. ¶ 6.) Apparently, Professor Feingold could have elected to continue to pay into TRS while employed at WCC, but he could not "double dip", i.e. collect his TRS pension while accruing a second pension in his new job.

In a letter to Defendant Hankin, dated September 1, 1983, Professor Feingold expressed his concern about this news. He indicated that he intended to seek advice on mounting a legal challenge to the statutory constraint. He expressed, as well, his concern (unfounded) that the law might prohibit his employment with WCC and frustrate his desire to continue working on the many projects he had in mind. (Arcuri Decl. Ex. E.) Professor Feingold apparently took no legal action at the time.

Over the years, the Plaintiff fulfilled the responsibilities of his new position, creating numerous cultural programs and courses reaching out to the members of the community. From 1983 through 1996 (when it became unnecessary because Professor Feingold reached age 70), Dr. Hankin, on behalf of WCC, filed the appropriate Form UP–211 waivers, required by Ret. & Soc. Sec. L. § 211, requesting approval of employment of a retired public employee who is currently drawing a pension. (Arcuri Decl. Ex. F).

On February 14, 1997, fourteen years after Professor Feingold and WCC had learned that state law prohibited him from simultaneously collecting and accruing pension benefits. Plaintiff asked Dr. Hankin to support an effort to get the New York State Legislature to pass a private bill authorizing a pension for his sixteen years of service to WCC. (Arcuri Decl. Ex. G.) In September 1997, Dr. Hankin sent a letter to the Chancellor of the State University of New York in support of "a waiver of the relevant provisions [of the code] to allow the granting of a pension to Stan-

ley Feingold for his sixteen years of service on the faculty of Westchester Community College." The letter cites an "explicit understanding shared by both [Feingold] and the College that he would be eligible for a pension for his service at WCC...." (Hankin Letter, appended to Arcuri Dec. as Ex. G.) The response, from Lawrence J. Katz, Director of Employee Benefits, reiterated the prohibition against "double dipping" under Art. 7 §§ 211 and 213, about which Professor Feingold and WCC had been apprised nearly fourteen years earlier. The Legislature did not pass any private bill.

On June 30, 1998, Professor Feingold, through attorney Jeffrey L. Goldberg, filed a Notice of Petition pursuant to New York Civil Practice Law and Rules (N.Y.C.P.L.R.) Art. 78, naming as defendants the State University of New York/Westchester Community College and The New York State and Local Employees' Retirement System. In the petition Plaintiff asked for a judgment and order 1) annulling the defendants' determination that denied him a second pension, 2) directing defendants to allow him that pension, and 3) directing defendants to make all retroactive contributions. (Arcuri Decl. Ex. B ¶ 11.) On November 24, 1998, Professor Feingold's attorney withdrew the action without explanation.

Plaintiff retired from his position at WCC in June, 1999. The instant complaint was filed three and one half years later, on June 12, 2002. The complaint alleges and seeks damages for Defendants' negligent misrepresentation and unjust enrichment and requests declaratory judgment that the Plaintiff is entitled to receive a pension or its equivalent.

## ARGUMENTS

Until the current complaint was filed, Plaintiff's predominant concern was ob-

taining a traditional pension administered by a formal pension system (*see* Notice of Pet.) (Article 78 action to compel granting a second pension); *see also* Arcuri Decl. Exs. E, F, and G) (various letters expressing concern over and requesting waiver of state law prohibiting double pensions and seeking legislative bill to override law and grant such a pension). The pleading before me, however, refers more generally to a "series of promises and representations" made by the Defendants for a "salary, benefits and other emoluments in a package such that it would be...desirable for him...[to] accept the position" and such that he "would have the same or nearly the same economic benefits as other WCC professors of substantially similar tenure and experience when they retired." (Compl. ¶¶ 8–9) He claims to have relied on this promise when he left his tenured position at City College. Having failed to receive money to recompense him for the loss of a second pension, Professor Feingold alleges that the Defendants made negligent misrepresentations in the form of the above promises and that the negligent misrepresentations were made to entice him away from City College. The complaint seeks declaratory judgment that he is entitled to receive such a pension or the equivalent benefits. (Compl. ¶¶ 13–21). And it alleges that Defendants were unjustly enriched to the extent that they have neither made contributions to any pension plan nor paid him equivalent sums.

The Defendants' multi-faceted motion to dismiss asserts, variously, that this Court lacks subject matter jurisdiction, personal jurisdiction over WCC, and personal jurisdiction over the individual Defendants in their official capacities; that Plaintiff failed to join an indispensable party; that the alleged "agreement" is invalid under the Statute of Frauds; and that Plaintiff's causes of action are both legally insufficient and time barred by the statute of limitations. (Mot. To Dismiss ¶ 2; *see generally* Defs.' Mem.) I consider only jurisdictional arguments at this time—which I must address before turning to any others. *Arrowsmith v. United Press Int'l,* 320 F.2d 219 (2d Cir.1963) (where defendant asserts both lack of jurisdiction and failure to state a claim, logic compels consideration of jurisdiction first if court is to have power to dismiss); *see also Allianz Ins. Co. v. Otero,* 2003 WL 262335, 2003 U.S. Dist. LEXIS 1284 (S.D.N.Y.2003). Because I determine that Plaintiff has not yet obtained jurisdiction over all Defendants in this action, I defer discussion of the additional arguments to a later opinion.

## DISCUSSION

I. Defendants' Motion to Dismiss for Lack of Personal Jurisdiction is Granted in Part and Denied in Part.

Defendants' arguments concerning the court's jurisdiction rest primarily on issues of service-who should have been served and in what manner. Unfortunately, there are ambiguities in the factual record before me that further complicate the parties' arguments regarding service. In their memoranda, Plaintiffs and Defendants assert their versions of how service was effected, neither of which is accurate or complete. The Plaintiff asserts that "all Defendants received the summons and complaint . . . All responded and waived formal service . . . including WCC." The Defendants assert that Plaintiff mailed waivers and acknowledgments, "to Defendants Hankin, Phillips, and Carey c/o WCC at 75 Grasslands Road, Valhalla, New York...Mssrs. Hankin and Carey signed in their individual capacities and timely returned the forms to Plaintiff's attorney. Defendant Phillips signed and returned the Waiver of Service..." The documents in the record reveal deficiencies

in both party's description of how service was effected.

It is undisputed that Plaintiff filed his complaint on June 12, 2002. On that day, the clerk issued plaintiff a summons addressed to: "Joseph N. Hankin, Timothy S. Carey, Harry Phillips, III, Westchester Community College; c/o Westchester Community College; 75 Grasslands Road; Valhalla, New York 10595." It is unclear whether, in compliance with Fed.R.Civ.P. 4(b), the Plaintiff obtained a copy of the summons for each defendant to be served. It is also unclear whether plaintiff mailed a separate copy of the summons, complaint, and waiver form for each defendant. Plaintiff has failed to file any completed waivers, or other proof of service, with the court. The Court is only aware of the appearance of the summons because a copy is included, along with a copy of the complaint, as Exhibit A to the declaration of Carol F. Arcuri, Senior Assistant County Attorney.

Defendants have also provided the court with copies of completed waivers for each of the three individual defendants, which are included in the record as Exhibit J to the declaration of Ms. Arcuri. Exhibit J contains a letter from Ms. Arcuri to Plaintiff's attorney, Mr. Goldbrenner, dated October 2, 2002, stating that she is returning two waivers of service of summons, signed by Joseph Hankin and Timothy S. Carey. The two waivers are attached. On Mr. Hankin's waiver, dated September 13, 2002, his name is typed on the line under his signature, and below his name the word "individually" is typed. Likewise, on Mr. Carey's waiver, dated September 19, 2002, his name is typed on the line under his signature, and again the word "individually" is typed below his name. Exhibit J also contains a waiver of service of summons of Harris Phillips, which was returned directly by Mr. Phillips to Mr. Goldbrenner. On Mr. Phillips waiver, dated September 11, 2002, his name is printed in handwriting below his signature. The line below his printed name is blank; the word "individually" is not written on the waiver. With the exception of the date/signature/name area, the waivers are identical; all contain the full caption of the case, listing all four defendants.

The differences in the completed waivers sent to Plaintiff's attorney by Ms. Arcuri and the completed waiver sent directly by Mr. Phillips suggest that Plaintiff created multiple, identical waivers of service, and left the date/signature/name area blank. Plaintiff may have sent four identical packages to Westchester Community College, with a copy of the summons, a complaint, and a blank waiver form for each of the four defendants. But it is also possible that Plaintiff sent only one copy of every document, and the waivers, summons, and complaint were copied upon receipt at Westchester Community College. Of course, other scenarios are possible as well, but none are definitively established by the record before the Court.

The Plaintiff has failed to provide important factual details as to how he attempted to effect service. Based on the limited information I do have, I consider whether Plaintiff has effected proper service on the individual Defendants and/or Westchester Community College.

### A. The Individual Defendants in their Individual Capacities

The undisputed facts establish that the three individual Defendants were properly served in their individual capacities. The Federal Rules of Civil Procedure provide that service may be effected in accordance with the Federal Rules or in the manner prescribed by the laws of the state in which the district court sits. Fed.R.Civ.P. 4(d) allows a plaintiff, in the interest of

costs, to request in writing that a defendant waive formal service of a summons. (New York C.P.L.R. 312–a allows substantially the same.) All three individuals received said requests and returned their waivers within 120 days after the filing of the complaint on June 12, 2002.

### B. The Individual Defendants in their Official Capacities

Insofar as the individual defendants in their official capacities are concerned, New York's County Law (as distinct from the Laws of Westchester County) provides that "No head of any agency, department, bureau, or office of the county shall be liable to...any other person for any act or omission of any employee of the county employed within the agency, department, [or] bureau....[Such] claims shall be lawful claims against the county and shall be deemed to be the liability of the county." N.Y. County Law § 54. Thus, to the extent that the three individuals are being sued in their official capacities—and the only claims stated against them arise our of their official duties as Trustees—they are not proper parties to this lawsuit. Therefore, the claims against defendants Hankin, Phillips and Carey are dismissed to the extent that they are sued in their official capacities.

### C. The Westchester Community College

■ Plaintiff has also sued WCC as an entity. The exact relationships between WCC, its senior officers, and the County that sponsors it turns out to be a thorny question. Its resolution is central to deciding who is a proper party to this action, who should have been served and how.

Defendants argue that WCC is not a juridical person subject to suit. Because it is a department of Westchester County, the County is the proper party defendant

here, and the County was neither named as a defendant nor properly served.

Generally, community colleges are creatures subject to (1) the State University system, which exercises certain oversight powers and provides some funding, (2) the county or local body that sponsors them, which participates in financing and oversees budgeting, and (3) powers exercised through a board of trustees which is, in turn, subject to the oversight of the State University trustees under the provisions of New York's Education Law. *See Mostaghim v. Fashion Institute of Technology,* 2001 WL 1537545, 2001 U.S. Dist. LEXIS 19782 (S.D.N.Y.2001) (generally describing this scheme).

New York's Education Law initially authorizes "any local sponsor...acting through its legislative body or board...[to][e]stablish a community college." N.Y. Educ. Law § 6302(1)(a). Westchester County is a "local sponsor" within the meaning of the law.

The Laws of Westchester County (LWC) provide that WCC, "established and operated" under the appropriate provisions of the Education Law, is a county "department." LWC § 194.61 requires that "all processes and papers for the commencement of actions and legal proceedings against the County...or any agency, commission *or department* thereof shall be served as provided by law...." In accordance with the Civil Practice Law and Rules, a County (or one of its departments) can only be served by serving its chief executive officer, the chair or clerk of its board of supervisors, the county clerk, the county attorney, or the county treasurer. Fed. R. Civ. P 4(j)(2); N.Y. C.P.L.R § 311(a)(4). None of those persons was served with process in this case.

The Education Law provides that a community college, like WCC, is to be operat-

ed by a Board of Trustees. N.Y. Educ. Law § 6302(1)(a). The Laws of Westchester County specify that WCC's Board of Trustees shall have all the powers and duties conferred by Education Law or as prescribed by the County Executive. LWC § 164.71. Three trustees were admittedly served with process in this case. However, neither the CPLR nor the Laws of Westchester County authorizes service of process on a trustee of a county department. And while there are a few cases that discuss the question of whether a community college, its sponsoring county, or both, are proper parties to lawsuits, none of them addresses the question of who should be served in order to obtain personal jurisdiction over the institution.[2]

If WCC were a corporation, it could of course be sued by serving members of its Board of Directors (Trustees). CPLR 312. However, WCC is not incorporated. Letter from Carol F. Arcuri, Senior Assistant County Attorney, dated April 29, 2003. It has no juridical existence other than as a department of Westchester County.

I thus conclude that the only way to obtain personal jurisdiction over WCC is to serve pursuant to CPLR 311(a)(4). Service on its Trustees does not suffice.

As noted above, under C.P.L.R § 311(a)(4), service on the County Attorney is an effective means of service on the County. And in this case the County Attorney ended up with the process that was served on two of the individual defendants; she even returned the waiver of personal service from defendants Hankin and Carey. No doubt she received the waivers from them because Education Law Section 6308 conditions the County's obligation to defend and indemnify trustees, officers, and employees of the college "in any civil action or proceeding in any state or federal court arising out of any alleged act or omission...which...is alleged...to have occurred while the employee was acting within the scope of his public employment or duties" on the prompt transmission of the pleading to the County. N.Y. Educ. Law § 6308(2)(a) and (4).

But there is no evidence that the County Attorney received a summons or waiver for WCC. WCC was one of the four defendants listed on the summons, but the address on the summons for all four defendants is "c/o WCC" in Valhalla, not the County Attorney's office in White Plains. Even if the circumstantial evidence suggests that Plaintiff created a separate summons and waiver for WCC, there is no evidence in the record that these documents were received by the County Attorney—or anyone else. If Plaintiff had mailed the summons directly to the County Attorney's office, and then failed to comply with the procedural provisions regarding waiver under 4(d), I could have overlooked

---

**2.** *Meyer v. Wiess,* 47 Misc.2d 1056, 263 N.Y.S.2d 813 (N.Y.Co.1965), aff'd. 25 A.D.2d 174, 268 N.Y.S.2d 226 (1966)(gift to community college should by rights have been made to the sponsoring county, not the institution); *Brown v. North Country Community College,* 63 Misc.2d 442, 311 N.Y.S.2d 517, 520–21 (1970)(community college is an independent entity and can be sued in its own right), *Horacek–Hayden, Inc. v. County of Monroe,* 65 Misc.2d 196, 317 N.Y.S.2d 575 (1970)(County, not community college, is proper party in contract action, since county has full financial responsibility for the institution); *Weinstein v. Caso,* 354 N.Y.S.2d 23, 44 A.D.2d 690 (1974)(because relationship between trustees of community college and its sponsoring county is an "unequal partnership," trustees are a necessary part in actions involving the performance of their duties); *Amato v. State of New York,* 131 Misc.2d 1049, 502 N.Y.S.2d 928, 930 (1986)(opining in dicta that either the institution's Trustees or the sponsoring county could be sued). See also, *Mostaghim v. Fashion Institute of Technology,* 2001 WL 1537545, 2001 U.S. Dist.LEXIS 19782 (S.D.N.Y 2001)(to the same effect as *Amato* ).

the deficiency if I had determined that the County of Westchester had actual knowledge of the action and was not prejudiced by the lack of waiver notice. *St. John Rennalls v. Co. of Westchester*, 159 F.R.D. 418 (S.D.N.Y.1994). But in this case, the County Attorney only had notice of the action because she received a copy of the summons from two of the individual defendants. While the County Attorney has an obligation to represent both the individual defendants and the County of Westchester in this action, service as to one of her clients does not effect service on all of the others, even if as a practical matter it provides her with notice of the action. I find that there is no factual basis from which I can conclude that WCC was properly served in this matter.

■ The question then becomes whether the Plaintiff's action against WCC must be dismissed, or whether I may provide him with an extension of time to effect proper service.

Fed.R.Civ.P. 4(m) provides that if service of the summons and complaint is not made within 120 days of the filing of the complaint:

the court... shall dismiss the action without prejudice as to that defendant, *or direct that service be effected within a specified time,* provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed. R. Civ. P 4(m) (emphasis added).

■ Good cause, or "excusable neglect," is evidenced only in exceptional circumstances, where the insufficiency of service results from circumstances beyond the plaintiff's control. An attorney's ignorance of the rules, inadvertence, neglect, or mistake do not constitute good cause. *Coram Healthcare Corp. v. Cigna*, 2002 U.S. Dist. LEXIS, *31 (S.D.N.Y.2002) (where plain-

tiff delayed service four months after two previous attempts were not acknowledged); *McKibben v. Credit Lyonnais*, 1999 WL 604883, *3–*4, 1999 U.S. Dist. LEXIS 12310, *9 (S.D.N.Y.1999) (where service on receptionist who asked the server to wait until she got an attorney to accept it was insufficient. Subsequent service failed because attorney did not notice change of address.). Although actual notice is not considered sufficient to satisfy the standards of Fed.R.Civ.P. 4, *McKibben,* at *9, 1999 WL at *3–*4 (citing *Ayres v. Jacobs and Crumplar, P.A.,* 99 F.3d 565 (3rd Cir.1996)); *see also Mopex. Inc. v. Amex. LLC,* 2002 WL 342522, *5, 2002 U.S. Dist. LEXIS 3532, *32 (S.D.N.Y. 2002), courts have held that the standards set by Fed.R.Civ.P. 4 should be liberally construed in order to allow personal jurisdiction in cases where the party has received actual notice and proper service may still be obtained. *Grammenos v. Lemos,* 457 F.2d, 1067 (2d Cir.1972) (citing *Nowell v. Nowell,* 384 F.2d 951 (5th Cir. 1967)). In determining good cause, courts have considered 1) whether the party exhibited reasonable diligence or made a reasonable effort to effect service, and 2) whether there is any prejudice to the defendants as a result of the delay. *Coram Healthcare Corp.,* 2002 U.S. Dist. LEXIS 23307 at 30.

The mistake made by Plaintiff's attorney in determining how WCC could be served is not excused by "good cause." Although he arguably made a reasonable and diligent effort in sending the requests for waivers on a timely basis to parties who would be aware of the underlying controversy, *see Shider v. Comm. Workers of America,* 1999 WL 673345, 1999 U.S. Dist Lexis 13184 (S.D.N.Y 1999) (plaintiff's mistaken belief that by serving union he was serving defendant employer was reasonable effort), if he mistakenly believed that this would also effect service as to WCC,

he could have been corrected his misunderstanding by simply referring to the appropriate statutes. There were certainly no circumstances beyond his control, and the fact that some of the parties thereby had actual notice is not grounds, in itself, to establish good cause.

■ However, even where good cause does not exist, courts remain free to exercise their discretion in extending the time for service. In *Henderson v. United States,* the Supreme Court, referring to comments of the Advisory Committee, noted that before the amendments to the rules in 1983, there was no time limitation and that the time limitation put in place was deemed necessary only because the primary responsibility for service shifted from federal marshals to the plaintiff himself. *Henderson v. United States,* 517 U.S. 654, 662, 116 S.Ct. 1638, 134 L.Ed.2d 880 (1996). The language in the amended Rule-"or direct that service be effected within a specified time"is a clear indication of that intended discretion. *Henderson,* 517 U.S. 654 at 663, n. 10, 116 S.Ct. 1638, 134 L.Ed.2d 880. In exercising this discretion, the courts consider 1) whether the statute of limitations would bar a re-filed action, 2) whether the defendant had attempted to conceal the defect in service, 3) whether the defendant would be prejudiced by excusing the plaintiff from the time constraints of the provision, and 4) whether the defendant had actual notice of the claims asserted in the complaint. *Coram Healthlcare, Corp.* at *33; *Conklin v. Sears Roebuck,* 2001 WL 175241, 2001 U.S. Dist. LEXIS 1693 (N.D.N.Y. Jan. 23, 2001). Thus, although actual notice does not in itself satisfy the demands of Rule 4, *see McKibben,* at *9, 1999 WL at *3–*4 the court may consider actual notice in determining whether to exercise its discretion to extend the time in which the Plaintiff may effect service.

In Plaintiff's case, the statute of limitations would not bar re-filing the action, but it would be judicially uneconomical to force that procedure at this point where extension can be granted. The defendant clearly has not tried to conceal the ineffective service, nor would the defendant be prejudiced by an extension. The fact that two of the three waivers were returned by Carol F. Arcuri, Senior Assistant County Attorney, fairly implies that the County had actual notice of the complaint. That fact, combined with the N.Y. C.P.L.R. § 311(a)(4) provision identifying the county attorney as one party upon whom service can appropriately be made, leads me to conclude that discretionary extension of the time period of service is warranted and to hold that dismissal based on improper service and the consequent lack of personal jurisdiction is denied. *See Conklin v. Sears Roebuck and Co.,* 2001 WL 175241, 2001 U.S. Dist LEXIS 1693 (N.D.N.Y. 2001) (although failure of service was not excused by good cause, court granted extension where defendant's counsel knew of the claims); *see also Myers v. Sec'y of the Dep't of the Treasury,* 173 F.R.D. 44 (E.D.N.Y.1997) (where plaintiff served IRS attorney but not Attorney General, et al., per Federal R. Civ. P. 4(i), court found no good cause but balanced equities and held essential purpose of service-i.e. notice-had been achieved).

## CONCLUSION

Plaintiff is directed to properly serve his complaint upon defendant Westchester County before May 20, 2003. Plaintiff is directed to file proof of service with the clerk of the court, and to fax a copy of proof of service to chambers. Plaintiff must also file with the clerk the original waivers of service which he has already obtained from the individual defendants.

I assume that the County Attorney will then enter an appearance in this case on behalf of Westchester County, adopting the arguments which she has already advanced on behalf of the individual defendants. I am prepared to announce a decision as to the merits of this case immediately thereafter.

This constitutes the decision and order of the Court.