[812 NYS2d 91]

Roosevelt Jackson, Respondent, v Board of Education of the City of New York., et al., Appellant.

First Department, April 4, 2006

APPEARANCES OF COUNSEL

*Michael A. Cardozo, Corporation Counsel*, New York City (*Mordecai Newman, Larry A. Sonnenshein* and *Steven N. Blivess* of counsel), for Board of Education of the City of New York, appellant.

*Conway, Farrell, Curtin & Kelly, P.C.*, New York City (*Jonathan T. Uejio* of counsel), for Board of Trustees of the Fashion Institute of Technology, appellant.

*Jeffrey Samel & Partners*, New York City (*David Samel* of counsel), for American Building Maintenance Co., appellant.

*Miller & Goldman*, New York City (*Julie L. Miller* and *Linda A. Goldman* of counsel), and *Alpert & Kaufman, LLP*, New York City, for respondent.

**OPINION OF THE COURT**

SULLIVAN, J.

On February 22, 2002 at about 6:30 P.M., near the end of his work shift, plaintiff, a utility worker employed by Aramark Educational Services, the exclusive food services contractor for the Fashion Institute of Technology (FIT), slipped and fell on a food substance near the freight elevator on the fifth floor at an FIT facility in Manhattan, thereby sustaining injuries. He thereafter commenced this action in Supreme Court against the Board of Education of the City of New York (BOE), as the building owner and operator, the Board of Trustees of FIT, as the lessee and operator, and American Building Maintenance Co. (ABM), a maintenance company under contract to FIT, alleging negligence in the ownership, operation and maintenance of the premises.

Codefendants BOE and ABM separately cross-moved for summary judgment dismissing the complaint and any cross claims.* FIT also moved for summary judgment dismissing the complaint and cross claims. BOE argued that it owed no duty of care to plaintiff as it did not own, operate, maintain or control the premises. Alternatively, it argued that it cannot be held liable for plaintiff's injuries since Education Law § 6306 (5) assigns responsibility for FIT's daily operation to FIT's Board of Trustees. It also argued that, in any event, plaintiff cannot show it

---

* BOE's cross motion was in response to FIT's motion, subsequently withdrawn, to strike plaintiff's note of issue.

had notice of the alleged condition causing the accident. FIT and ABM each similarly argued that it had no notice of the alleged condition. Nor, each argued, did it create the condition. ABM also argued that plaintiff's employer, Aramark, was solely responsible for maintaining the area where plaintiff fell. In addition, ABM argued that as a janitorial services provider that contracted with FIT, it owed no duty directly to plaintiff.

The court denied summary judgment as to all the moving parties, holding, inter alia, that BOE was deemed to have a statutory duty to manage the FIT campus along with the trustees of FIT. It also held that FIT's contracts with Aramark and ABM raised material issues of fact as to the actual scope of the respective responsibilities of ABM and Aramark. Thus, the court held, each of those defendants failed to show, as a matter of law, that it owed no duty of care to plaintiff. The court also found an issue of fact as to constructive notice. This appeal followed.

As to whether BOE owed a duty of care to plaintiff, the motion court erroneously relied on the principle of issue preclusion in citing the decision in the related case of *Jackson v State of New York* (Ct Cl, July 10, 2002), which held that FIT is a "community college sponsored by the Board of Education of the City of New York . . . [and as] a result, the Board of Education of the City of New York is 'vested with the powers of the board of trustees of [the] community college' . . . and is responsible for the 'care, custody, control and management of the lands, grounds, buildings, facilities and equipment' of the school (Education Law § 6306 [5])." The court also cited *Amato v State of New York* (131 Misc 2d 1049, 1052 [1986]) for the proposition that Education Law § 6306 produces a "dual nature of operation, maintenance and control" in which the Board of Education and FIT's Board of Trustees simultaneously maintain overlapping duties with respect to FIT.

In both of these cases, however, the personal injury actions against FIT were dismissed for lack of jurisdiction since FIT is part of neither the State University of New York nor the City University of New York. The only issue essential to the courts' disposition of those cases was whether FIT was a proper party before the Court of Claims. Since that court lacked jurisdiction to decide the merits of any other issue in the particular action, its statements on any other issue were mere dicta, unrelated to the issue actually litigated on the merits. Moreover, inasmuch as BOE was not a party to either action with an opportunity to be heard on the issue, it could not be precluded in this action on

the basis of collateral estoppel (*see Ryan v New York Tel. Co.*, 62 NY2d 494, 500-501 [1984]).

As to the merits, the record shows that since BOE does not own, operate, maintain or control FIT's premises, it owes plaintiff no duty of care. Title to the premises where the accident occurred, known as the Dubinsky Student Center, at 243 West 27th Street, vests in the City of New York, not BOE. "Liability for a dangerous condition on property may only be predicated upon occupancy, ownership, control or special use of such premises" (*Gibbs v Port Auth. of N.Y.*, 17 AD3d 252, 254 [2005]; *Balsam v Delma Eng'g Corp.*, 139 AD2d 292, 296-297 [1988], *lv dismissed and denied* 73 NY2d 783 [1988]). Since there is no showing of BOE's occupancy, control or special use of the premises, any liability premised on operation and maintenance must rest on the Board of Trustees of FIT, the lessee and operator of the premises and the party responsible for its maintenance, or, if the facts demonstrate, ABM, its maintenance contractor.

Contrary to Supreme Court's ruling and the Court of Claims decisions on which it relied, Education Law § 6306 does not impose upon BOE a duty to manage or assume responsibility for the maintenance of FIT's facilities. FIT, a community college established pursuant to Education Law article 126, entitled "Community Colleges and State-aided Four-Year Colleges," operates in the City of New York under the sponsorship of BOE (*see* Education Law § 6302 [3]). As the sponsor of FIT, BOE is responsible for its fiscal operation (*see Meyer v Wiess*, 25 AD2d 174 [1966]). The responsibility for the day-to-day management of the college's facilities falls upon its trustees. Specifically, Education Law § 6306 (5) imposes upon the trustees of FIT the care, custody, control and management of its campus buildings. The statutory scheme controls the relationship between BOE, as sponsor, and FIT's Board of Trustees, as lessee of the facilities, affording the latter the freedom to conduct the daily operations of managing the facility as it sees fit, including the right to contract for its maintenance (*see Kuznetz v County of Nassau*, 229 AD2d 476, 476 [1996] ["The management of the affairs of the College rests with its Board of Trustees"]; *Meyer*, 25 AD2d at 176-177).

This statutory scheme designating its Board of Trustees as the sole party responsible for the operation of FIT's facilities shields BOE, the sponsor, from liability that might otherwise attach. In *Matter of Weinstein v Caso* (44 AD2d 690 [1974]),

petitioners, professors at Nassau Community College, challenged a decision by the college's sponsor, the County of Nassau, to change a "rent-free" housing policy for certain faculty personnel. The Court, noting the board of trustees' "sole authority" over the administration of community colleges, held that the housing policy, "if it is to be changed, must be changed by the board of trustees, which is enjoined by law (Education Law, § 6306, subd. 2) to 'discharge such other duties as may be appropriate or necessary for the effective operation of the college' " (*id.* at 691). Notwithstanding that the issue here relates to maintenance of the college premises arising out of responsibility for the operation and control of said premises and not administrative policy, the fact is that since the Board of Trustees is the only entity authorized to operate the college, it alone is charged with the duty of care.

Aside from relying, mistakenly, on the doctrine of issue preclusion in reaching its determination that BOE owed a duty of care to plaintiff in the maintenance of the premises, Supreme Court quoted approvingly from both the decision in the related matter, *Jackson v State of New York* (*supra* [the school being a community college sponsored by BOE, BOE is "vested with the powers of the board of trustees" and is responsible for the "care, custody, control and management of the lands, grounds, buildings, facilities and equipment" of the school, under Education Law § 6306 (3) and (5)]) and *Amato* (131 Misc 2d 1049 [1986], *supra*).

Both courts, however, misconstrued Education Law § 6306 (3) insofar as it provides that the BOE, in its capacity as the sponsor, is "vested with the powers of a board of trustees." Under the statute, this vesting of powers applies only where the BOE has assumed for itself the role of board of trustees. The very sentence containing the "vested with" language goes on to authorize an alternative vesting of such powers in a board of trustees independent of the BOE, i.e., "or upon the application of the sponsoring board, approved by the state university trustees, the board of trustees of such community college may be appointed and serve in the manner provided by subdivision one of this section." The choice of vesting power in the BOE or in a separate board of trustees creates two alternative and mutually exclusive options. Thus, the statute confers upon the BOE the powers of the board of trustees only in those instances where no independent board of trustees has been appointed. There is nothing in the statutory language to support the proposition an-

nounced in *Amato*, and relied upon by Supreme Court, that Education Law § 6306 provides for a "dual nature of operation, maintenance and control" in which the BOE and the Board of Trustees of FIT simultaneously maintain overlapping powers. Inasmuch as the BOE neither owns FIT's premises nor shares authority with its Board of Trustees with respect to the care and maintenance of the premises, it had no duty of care toward plaintiff and cannot be held liable for his injuries.

Even, however, if the BOE owed a duty of care to plaintiff, it would still be entitled to summary judgment since plaintiff cannot show that it had prior notice of the defective condition. To hold a party with a duty of care liable for a defective condition, it must have notice, actual or constructive, of the hazardous condition that caused the injury (*Gordon v American Museum of Natural History*, 67 NY2d 836 [1986]; *see also Piacquadio v Recine Realty Corp.*, 84 NY2d 967 [1994]). "Liability based on constructive notice may only be imposed where a defect is visible and apparent and has existed for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it" (*Espinal v New York City Hous. Auth.*, 215 AD2d 281, 281 [1995]).

In his deposition testimony, plaintiff described the debris on which he slipped as "lettuce scrappings, vegetable material scrappings [*sic*]." The discovery process produced no evidence that the BOE or any of the defendants was aware of the condition in advance of the accident. As the motion court acknowledged, none of the defendants had actual knowledge of the condition. Nor is there a scintilla of evidence in the record that the BOE or, for that matter, FIT or ABM, had constructive notice of the presence of such matter on the floor for a period of time sufficient to have known of it. There is no suggestion that either FIT or ABM created the condition.

Plaintiff's duties for Aramark included sweeping and mopping the area where the accident occurred. According to his deposition testimony, on the evening of February 21, 2002, the night before the accident, plaintiff left work after completing the cleaning of the floors, including the area where he alleges he slipped. By his own account, he left the area clean after sweeping and mopping it. He testified that he was unaware of any complaints about the presence of lettuce or tomato or a smudge mark on the floor. There is no evidence that anyone, including plaintiff, had observed the condition before the accident. Thus, the vegetable matter could have been deposited on

the floor minutes before the accident. Such circumstances eliminate any question of fact as to constructive notice (see *Gordon*, 67 NY2d at 837). The testimony that the lettuce, post-accident, did not look fresh is of no legal significance. Wilted or shriveled lettuce can fall on the floor as easily as fresh lettuce.

In that regard, plaintiff testified that he worked on several floors, including the fifth, where the cafeteria was located. According to plaintiff, the fifth floor cafeteria consisted of three distinct areas: the dining room, the kitchen area where Aramark employees prepared food for serving, and an area near the freight elevators, where garbage bags were deposited for ultimate removal. This area also contained a storage room and a dishwasher. As part of his duties, plaintiff swept and mopped the fifth floor cafeteria, including the area near the freight elevators where he fell. Only Aramark employees worked in this area. Plaintiff, using the freight elevator, also brought food that had been prepared in the main kitchen on the fourth floor to the fifth floor kitchen area. He also carried food trays from the dining room to the dishwasher. Plaintiff had swept the area near the freight elevators in the morning on the date of his accident and had deposited bags of garbage in the area about 30 minutes before the accident. As noted, he did not see the complained-of vegetable matter before he slipped on it.

Given that there is no evidence even remotely suggesting that anyone connected with defendants created the condition complained of, the lack of actual or constructive notice of its existence on the part of any of the defendants serves to relieve all of them of any liability for plaintiff's accident. Moreover, since it was plaintiff's job to clean the floor of the type of foreign substance (vegetable matter) that he slipped on, FIT owed him no duty to keep the floor clean of such material. FIT "could not have provided plaintiff with a work place that was safe from the defect that his employer was engaged to eliminate" (*Brugnano v Merrill Lynch & Co.*, 216 AD2d 18, 19 [1995], *lv dismissed and denied* 86 NY2d 880 [1995]).

As in the case of BOE, ABM was similarly entitled to summary judgment because it owed no duty to plaintiff. As argued in its motion, ABM was not contractually obligated to clean the food preparation area near the freight elevators adjoining the cafeteria dining room, where plaintiff fell. Witnesses for both ABM and FIT gave deposition testimony that ABM had no responsibilities with respect to the area in which the accident occurred. Nor, as the record shows, did plaintiff identify any

contract provision requiring ABM to clean the area of the accident.

Although acknowledging that FIT's contract with Aramark made Aramark responsible for routine cleaning and housekeeping in the food preparation and services areas where the accident occurred, Supreme Court held that the ABM agreement with FIT was less than clear as to whether ABM remained ultimately responsible for cleaning the cafeteria and adjoining areas. In that connection, the court cited various sections of the ABM contract. The first, entitled "Administrative Office Areas, Libraries, Cafeteria and Auditoriums," required ABM to sweep and damp mop all tile flooring; empty and clean all trash, recyclable and other receptacles; and wash the cafeteria and flooring. A second, entitled "Lobbies, Elevators and Escalators," required it to sweep, wash and buff all flooring, removing any foreign matter or gum, while a third, entitled "Miscellaneous Areas," required it to sweep and damp mop all flooring.

Nothing in these provisions required ABM to clean the subject area. The first required ABM to clean the floors of the cafeteria, which was not the area of plaintiff's fall, i.e., the food preparation area near the cafeteria where Aramark's employees worked. The second of the provisions involves elevator floors but not the area outside the elevators. Thus, the proximity of the freight elevators to the food preparation area is irrelevant. Finally, the third provision, covering "Miscellaneous Areas," cannot reasonably be construed to include every floor area not covered elsewhere in the contract. If the parties intended to obligate ABM to clean every floor on the FIT campus, they could easily have so provided, rather than specify certain areas in which it was obligated to clean floors. In contrast, Aramark's contract with FIT explicitly required it to clean the food preparation area: Aramark "will be responsible for routine cleaning and housekeeping in the food preparation and service areas and for the cleaning of dining room tables, chairs and floors." Thus, it is clear that analysis of both contracts unambiguously reveals that Aramark, not ABM, was obligated to clean the food preparation area. Moreover, even if the ABM contract were found to be ambiguous, the undisputed evidence shows that the parties operated as if Aramark alone, and not ABM, was responsible for cleaning the food preparation and service areas. It has been consistently held that the parties' own construction of a contract should be given considerable weight in determining its meaning (*Alternatives Fed. Credit Union v Olbios, LLC*, 14 AD3d 779, 781 [2005]; *Canick v Canick*, 122 AD2d 767, 768 [1986]).

ABM is also entitled to summary judgment because any duty it owed was to FIT, not plaintiff. Under well-settled law, ABM, as a service contractor to FIT, subject to certain exceptions not applicable here, owed no duty of care to a noncontracting third party arising out of its contractual obligation or the performance thereof (*Church v Callanan Indus.*, 99 NY2d 104 [2002]; *Espinal v Melville Snow Contrs.*, 98 NY2d 136, 138-139 [2002]; *Palka v Servicemaster Mgt. Servs. Corp.*, 83 NY2d 579 [1994]). The first exception to the rule is "where the promisor, while engaged affirmatively in discharging a contractual obligation, creates an unreasonable risk of harm to others, or increases that risk" (*Church*, 99 NY2d at 111), described as launching "a force or instrument of harm" (*id.*, quoting *Moch Co. v Rensselaer Water Co.*, 247 NY 160, 168 [1928]). The second exception is where a party suffers injury as a result of reasonable reliance upon the contracting party's continued performance of its contractual obligation (*Church*, 99 NY2d at 111). The third exception allows tort liability against a promisor "where the contracting party has entirely displaced the other party's duty to maintain the premises safely" (*id.* at 112 [citation omitted]).

It is beyond dispute that the first two exceptions have no application to the instant claim since ABM neither affirmatively created the condition causing plaintiff to fall nor increased the risk of his injury. Nor did plaintiff reasonably rely on any undertaking by ABM. In fact, neither plaintiff nor the motion court discussed either of these exceptions. The court did, however, find a triable issue of fact as to whether ABM owed a direct duty to plaintiff under the third exception.

To qualify under the third exception, the FIT/ABM contract would have had to constitute a "comprehensive and exclusive property maintenance obligation which the parties could have reasonably expected to displace [the property owner's] duty . . . to maintain the property safely" (*Riekers v Gold Coast Plaza*, 255 AD2d 373, 374 [1998]; *see Espinal*, 98 NY2d at 141). The ABM contract does not qualify under this exception for two reasons. First, it is not comprehensive: ABM did not assume a blanket responsibility for the entire FIT campus, but only for those areas specifically designated in the contract. That several provisions of the agreement specify areas to be cleaned by FIT surely demonstrates that ABM undertook no such obligations in areas not designated as its responsibility. Second, as to the area where plaintiff fell, i.e., the food preparation and service area, ABM's contract could not have been exclusive since it is

undisputed that FIT's contract with Aramark required Aramark to perform cleaning duties in this area. Thus, even assuming, arguendo, a concomitant duty owed by ABM, such duty could not have been exclusive. Since the ABM contract lacks exclusivity in the area where plaintiff fell, it cannot constitute the type of comprehensive and exclusive property maintenance obligation required to fit within the third exception. On this point, Supreme Court held that it was not clear whether "Aramark's duty to clean and maintain the cafeteria and adjoining areas was exclusive, or whether ABM remained ultimately responsible." Whether Aramark's duty was exclusive was not the issue as to the existence of a duty on the part of ABM to plaintiff. As already noted, the very existence of a duty by Aramark made ABM's duty, if it existed at all, nonexclusive.

Thus, the complaint and cross claims should have been dismissed for the reasons advanced in the motions.

Accordingly, the order of the Supreme Court, New York County (Paul G. Feinman, J.), entered August 22, 2005, which denied the motions by defendants FIT, BOE and ABM for summary judgment dismissing the complaint and cross claims, should be reversed, on the law, without costs or disbursements, and the motions granted. The Clerk is directed to enter judgment in favor of defendants dismissing the complaint.

Tom, J.P., Nardelli, Catterson and McGuire, JJ., concur.

Order, Supreme Court, New York County, entered August 22, 2005, reversed, on the law, without costs or disbursements, and defendants' motions for summary judgment dismissing the complaint and cross claims granted. The Clerk is directed to enter judgment in favor of defendants dismissing the complaint.