■ Nicolaos Stavrou et al., Appellants, v Spyro C. Contogouris, Respondent, et al., Respondents. Schanson Capital Management LLC, Nonparty Respondent. [841 NYS2d 53]—

Order, Supreme Court, New York County (Richard B. Lowe, III, J.), entered on or about August 8, 2006, which denied petitioners' application to hold respondents Spyro C. Contogouris and Schanson Capital Management LLC in contempt, unanimously reversed, on the law, with costs, and the matter remanded to Supreme Court for a hearing on the contempt application.

Respondent Spyro Contogouris was the manager and officer of petitioner Prestige Holdings Inc. and its subsidiary Decana Inc., which owns an apartment building in New York City. On April 5, 2002, Contogouris was removed from all positions of authority with Prestige and Decana. However, he challenged his removal and refused to step down. A proceeding was brought to confirm his removal and on May 6, 2002 a temporary restraining order (TRO) was issued by Supreme Court prohibiting Contogouris from "destroying, removing, hiding or altering the books and records of Prestige Holdings Inc. and Decana Inc. in any manner other than to release to Nicolaos Stavrou or his authorized representative all books, files, correspondence, assets and property to Prestige Holdings Inc., and Decana Inc." On June 7, 2002 the parties stipulated that the TRO would remain in effect until there was a determination on the proceeding to remove Contogouris.

A similar proceeding was brought in the Southern District of

Texas to remove Contogouris from his position of authority with two Texas subsidiaries of Prestige (Ashford-on-the-Bayou Inc. and 2100 WLS Inc.).[1] A TRO was issued in that proceeding that, like the New York TRO, prohibited Contogouris from dealing with the Texas subsidiaries' assets.

The proceedings were determined in petitioners' favor and Contogouris was removed from positions of authority in Decana, Prestige and all of its subsidiaries. Thereafter, petitioners commenced this action for contempt alleging that while those proceedings were pending and in violation of the TRO, Contogouris misappropriated funds belonging to Decana and/or Prestige and its subsidiaries. While that application was pending petitioner also commenced contempt proceedings against Contogouris in the District Court in Texas charging that he had violated the prohibitions contained in that court's TRO. The District Court subsequently denied the application to hold Contogouris in contempt, simultaneously dismissing the action for lack of jurisdiction.

Thereafter, Supreme Court summarily denied petitioners' application to find Contogouris in contempt, not because it was without merit, but because it found that the Texas decision dismissing the motion for contempt had a collateral estoppel effect on the New York proceeding. This was error, as it is clear from the records that the Texas District Court based its decision to dismiss solely on the finding that it lacked jurisdiction.[2] As such, its decision should not have been acceded preclusive effect (*see Jackson v Board of Educ. of City of N.Y.*, 30 AD3d 57, 59 [2006]; *Curry Rd. v K-Mart Corp.*, 191 AD2d 905 [1993]).

Moreover petitioner set forth sufficient facts in its application for an order to show cause to establish a prima facie basis for holding Contogouris in contempt and its application should not have been denied without a hearing. Specifically, petitioners claim that on June 18, 2002 the Internal Revenue Service issued Prestige a tax refund check for $457,206. Six days later, on June 24, 2002, the check was deposited in a brokerage account in Prestige's name on which Contogouris was the only signatory and as such the only person authorized to withdraw funds. Subsequently all of this money was withdrawn pursuant to wire transfers which petitioners claim Contogouris signed and then

   **1.** A third proceeding to remove him from Prestige was brought in Delaware because Prestige is a Delaware corporation. No TRO was issued in that proceeding.
   **2.** The Texas court issued two one-line decisions: the first stated that the contempt motion was denied and the second said the action itself was dismissed for lack of jurisdiction.

used to deposit all of these funds into a bank account of Schanson Capital Management LLC, a company over which Contogouris has sole control.[3] According to petitioners, none of these funds have been returned to Prestige.[4]

Supreme Court's summary denial of petitioners' application must be reversed and the matter remanded for a de novo hearing on the contempt application. Concur—Mazzarelli, J.P., Saxe, Sullivan, McGuire and Kavanagh, JJ.

3. The first transfer on June 28, 2002 was for $450,000 and the second on June 12, 2002 amounted to $7,201.84.

4. Two other tax refund checks amounting to more than $300,000 ($178,638.50 and $141,575) were issued to subsidiaries of Prestige and according to petitioners were ultimately negotiated into accounts controlled by Contogouris and later withdrawn. None of these funds have been returned to petitioner or its subsidiaries.

Petitioner at oral argument conceded that these checks were issued and cashed prior to the date the TRO was entered and as a result did not argue that these transactions could constitute violations of the TRO. Such a concession seems to ignore the possibility that the *subsequent* disbursement of those funds *after* the date of the TRO could constitute a basis for such a violation.