**AIG MANAGED MARKET NEUTRAL FUND, Alpha Neutral Fund, Antaeus Enterprises, Inc., William B. Cook, GAM Relative Value Strategies, L.P., GAM Relative Value Strategies, Inc., Hemisphere Neutral Fund, New Vernon Partners, L.P. and Republic U.S. Equity Fund, Plaintiffs,**

v.

**ASKIN CAPITAL MANAGEMENT, L.P.; David J. Askin; Kidder, Peabody & Co., Incorporated; and Donaldson, Lufkin & Jenrette Securities Corporation, Defendants.**

No. 98 Civ. 7494(RWS).

United States District Court, S.D. New York.

Oct. 5, 2000.

Bragar Wexler Eagel & Morgenstern, New York City, by Paul D. Wexler, Peter D. Morgenstern, Lisa K. Eastwood, of counsel, for Plaintiffs.

Morgan, Lewis & Bockius, New York City, by Catherine A. Ludden, of counsel, for Donaldson, Lufkin & Jenrette Securities Corp.

## OPINION

SWEET, District Judge.

Defendant Donaldson, Lufkin & Jenrette Securities Corporation ("DLJ") moves for an order dismissing with prejudice the complaint in this action as to DLJ, pursuant to Federal Rule of Civil Procedure 12(b)(5). Plaintiffs AIG Managed Market Neutral Fund, Antaeus Enterprises, Inc., William B. Cook, Equator Investments Limited, GAM Relative Value Strategies, L.P., GAM Relative Value Strategies Fund, Inc., Hemisphere Neutral Fund, New Vernon Partners, L.P., and Republic U.S. Equity Fund (collectively, the "AIG Plaintiffs") oppose the motion by DLJ and cross-move for an order extending the 120–day period of service for the summons and complaint in this action upon DLJ *nunc pro tunc* through and including May 16, 2000, pursuant to Federal Rule of Civil Procedure 4(m).

For the reasons set forth below, the motion by the AIG Plaintiffs will be granted, and the motion by DLJ will be denied.

### The Parties

The AIG Plaintiffs were at all relevant times investors in the now-bankrupt hedge funds, Granite Partners, L.P. ("Granite Partners"), a limited partnership registered in the State of Delaware, Granite Corporation ("Granite Corp."), incorporated in the Cay-

man Islands, and/or Quartz Hedge Funds ("Quartz"), also incorporated in the Cayman Islands (collectively, the "Funds").

DLJ, Kidder, Peabody & Co., Inc. ("Kidder") and Bear Stearns & Co., Inc. ("Bear Stearns"), are broker-dealers and are Delaware corporations with their principal place of business in New York.

Askin Capital Management ("ACM"), a registered investment adviser, was at all relevant times a Delaware limited partnership with its principal place of business in New York. David J. Askin was the Chief Executive Officer of ACM.

### Prior Proceedings and Facts

The instant action (the "AIG Action") is one of six actions (the "Consolidated Actions") that were consolidated for discovery. The plaintiffs in the Consolidated Actions all invested in Granite Partners, Granite Corporation, and/or Quartz.

Counsel for the AIG Plaintiffs, Bragar Wexler Eagel & Morgenstern, LLP ("Bragar Wexler") is also counsel for the plaintiffs in two of the Consolidated Actions, *Montpellier Resources, Ltd., et al. v. Askin Capital Management, L.P., et al.,* 97 Civ. 1856 (the "Montpellier Action") and *Richard Johnston, et al. v. Askin Capital Management, L.P., et al.,* 97 Civ. 4335 (the "Johnston Action"). DLJ is a defendant in the *Montpellier* and *Johnston* Actions. The complaints in *Montpellier* and *Johnston* Actions were served on DLJ.

The AIG Plaintiffs filed the complaint in the AIG Action on October 22, 1998. On October 26, 1998, counsel at Bragar Wexler mailed a letter to counsel at Morgan, Lewis & Bockius, LLP ("Morgan Lewis"), who represent DLJ in this action, enclosing a copy of the complaint and two copies of a Notice of Lawsuit and Request for Waiver of Service of Summons, and requesting that Morgan Lewis accept service on behalf of DLJ. The complaint included a claim for aiding and abetting breach of fiduciary duty which this Court had previously ruled could not be pursued by the Investor Plaintiffs. *See* Complaint ¶¶ 148–151; *ABF Capital Management v. Askin Capital Management, L.P.,* 957 F.Supp. 1308, 1331–32 (S.D.N.Y.1997).

Morgan Lewis maintains that it informed Bragar Wexler that it would not accept service unless this claim was removed from the complaint either by stipulation or a revised complaint, but that Bragar Lewis never responded to that request. This representation is not disputed by Bragar Lewis.

Morgan Lewis also sought a waiver of service of summons from counsel for defendants Kidder and Bear Stearns. Counsel for Kidder executed a waiver on November 4, 1998, and counsel for Bear Stearns executed a waiver on November 12, 1998. Subsequently, in a letter dated December 1, 1998 from Bragar Wexler to counsel for Kidder, Bragar Wexler confirmed that in a conversation on November 25, 1998, the AIG Plaintiffs and Kidder agreed that, in light of the previous rulings of this Court, Kidder was not required to respond to the claim for aiding and abetting breach of fiduciary duty. In a letter dated December 16, 1998 from Bragar Wexler to counsel for Bear Stearns, Bragar Wexler confirmed that an identical agreement had been reached between the AIG Plaintiffs and Bear Stearns in a conversation earlier that week.

Morgan Lewis did not execute and return the waiver of service, and DLJ never answered the complaint. Discovery as to the Consolidated Actions was coordinated among the various defendants and plaintiffs. DLJ participated in discovery concerning the Consolidated Actions, including *inter alia* meetings regarding scheduling, depositions, and document production. However, DLJ did not serve discovery requests on the AIG Plaintiffs, did not move to compel discovery from the AIG Plaintiffs, did not enter into stipulations with the AIG Plaintiffs, did not make certain motions in this action which it made in the other Consolidated Actions, and did not seek summary judgment against the AIG Plaintiffs. DLJ did not attend the depositions of the AIG Plaintiffs. DLJ attended thirteen of the nineteen depositions conducted in the *Montpellier* and *Johnston* Actions. DLJ did not ask questions of any of the fact witnesses in the *Johnston* or *Montpellier* cases, in which counsel for the other defendants acted as lead examiner. DLJ attended the deposi-

tions of the AIG Plaintiffs' expert witnesses, since those experts filed reports on behalf of all the plaintiffs in the Consolidated Actions.[1]

In a verified response to an interrogatory propounded in one of the related cases, *ABF Capital Management v. Askin Capital, et al,* 96 Civ. 2978, DLJ identified itself as a party in this case. *See* DLJ Resp. and Obj. to Pl. Second Set of Interrog., January 22, 1999, Resp. to Interrog. No. 1. DLJ also joined Kidder's motion for disclosure of the confidential Bear, Stearns settlement agreement, which included the AIG Plaintiffs. *See ABF Capital Management v. Askin Capital, et al,* 2000 WL 191698, at *1 (S.D.N.Y. Feb. 10, 2000). In addition, DLJ initially joined in Kidder's motion for summary judgment against the plaintiffs in all of the Consolidated Cases, including this one, which position DLJ clarified in a letter to the Court dated May 26, 2000 as relating to all of the cases other than this one.

On May 12, 2000, DLJ moved for summary judgment in all of the Consolidated Actions except the AIG Action. In its memorandum of law DLJ took the position that, although it is listed in the caption of the AIG Action, "DLJ was not served, nor has that action been prosecuted against DLJ. As DLJ is not a party in that matter, this motion does not address that case." This was the first time DLJ expressly made known its view that it was not a party to the AIG Action because it had not been served.

On May 16, 2000, the AIG Plaintiffs served the complaint in this action on DLJ. By letter of May 19, 2000, the AIG Plaintiffs sought an order from the Court extending the 120–day period of service. That letter was treated as a motion and oral argument was heard on May 31, 2000. On June 5, 2000, DLJ filed the instant motion to dismiss, oral argument was heard on June 21, 2000, and submissions were received through June 22, 2000, at which time the matter was deemed fully submitted. On June 20, 2000, the AIG Plaintiffs moved formally for an order extending the 120–day period of service, and oral argument was heard on June 21, 2000, at which time the matter was deemed fully submitted.

## Discussion

The AIG Plaintiffs served DLJ eighteen months after the 120–day period had expired, thus plainly failing to effect timely service as to DLJ. DLJ contends that the complaint should be dismissed as to them because the AIG Plaintiffs failed to effect service within the 120–day period set forth in Rule 4(m). DLJ further contends that the statute of limitations has expired on the AIG Plaintiffs' claims, so that a dismissal would be with prejudice *de facto.* The AIG Plaintiffs respond that there is good cause for there failure to timely serve DLJ, that the time for service should be extended even if it is determined that they lacked good cause, and that DLJ waived its right to object to their failure. The AIG Plaintiffs also contend that the statute of limitations has not run and, therefore, that even if dismissal is granted that the action is not time-barred.

### I. The Standard Under Rule 4(m)

Federal Rule of Civil Procedure 4(m) provides in relevant part:

> [if] service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m).

Federal Rule of Civil Procedure Rule 12(b)(5) provides for dismissal of an action if service of process was not timely effected in accordance with Federal Rule of Civil Procedure 4(m). Rule 4(m) allows for the dismiss-

---

1. Certain of the facts set forth above are drawn from an affidavit by Catherine A. Ludden, Esq., an attorney with Morgan Lewis, while others are drawn from the briefing submitted by Bragar Wexler. Although Bragar Wexler should have submitted any factual allegations in the form of an affidavit, those allegations which are included here are undisputed and find support in the record.

al of an action if service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint. However, if the plaintiff can show good cause for the failure to timely effect service, the court "shall extend the time for service for an appropriate period." Fed.R.Civ.P. 4(m).

■ The plaintiff bears the burden of proof in showing that it had good cause in not timely serving the defendant. *See* Fed. R.Civ.P. 4(m); *Mason Tenders District Council Pension Fund v. Messera,* No. 95 Civ. 9341, 1997 WL 221200, at \*3 (S.D.N.Y. April 1, 1997). Good cause is measured against the plaintiff's reasonable efforts to effect service and the prejudice to the defendant from the delay. *See, e.g., Motel 6 Sec. Litig. v. Hugh Thrasher,* No. 93 Civ. 2183, 1995 WL 431326, at \*2 (S.D.N.Y. July 20, 1995) (citing cases). In particular, the court should look to whether "the plaintiff was diligent in making reasonable efforts to effect service, including but not limited to whether plaintiff moved under FRCP 6(b)" for an extension of time in which to serve the defendant. *Gordon v. Hunt,* 835 F.2d 452, 453 (2d Cir.1987). A delay in service resulting from the mere inadvertence, neglect, or mistake of a litigant's attorney does not constitute good cause. *See, e.g., Myers v. Secretary of the Dep't of the Treasury,* 173 F.R.D. 44, 47 (E.D.N.Y.1997) (citing cases); *Delicata v. Bowen,* 116 F.R.D. 564, 566 (S.D.N.Y.1987).

### A. The AIG Plaintiffs Did Not Have Good Cause For Their Failure To Serve DLJ

■ Bragar Wexler's letter to Morgan Lewis on October 26, 1998 was not an attempt to serve process. Rather, it was an attempt to obtain a waiver of the return of service. In the letter Bragar Wexler requested Morgan Lewis to "[p]lease let us know if you will accept the complaint on your client's behalf." Subsequently, although Morgan Lewis did not return the waiver request, the AIG Plaintiffs did not attempt to effect proper service nor did they move for an enlargement of time under Rule 6(b).

The AIG Plaintiffs concede that their failure to serve DLJ was due to the inadvertence of their attorneys. Nonetheless, they contend that there was good cause for this failure on the theory that DLJ intentionally concealed a defect in the service until after it believed the statute of limitations had run on the AIG Plaintiffs' claims. The AIG Plaintiffs cite various actions—and forms of inaction—by DLJ in this regard, contending in essence that DLJ behaved as if it were participating in all of the Consolidated Actions and deliberately failed to disclose its view that it had not been served in the instant case. Morgan Lewis responds that DLJ believed that the AIG Plaintiffs had decided for reasons of their own not to prosecute this action against DLJ. Moreover, Morgan Lewis avers that in any event it was under no duty to disclose its view that DLJ was not a party to this action since it would not have been contrary to DLJ's interests to "sound the alarm" on a $40 million claim for which the statute of limitations was about to expire.[2]

The AIG Plaintiffs are represented by sophisticated counsel, and concede that their failure to serve DLJ was inadvertent. They cite to certain cases for the proposition that a defendant's concealment of a technical defect in service may give rise to good cause under Rule 4(m). *See, e.g., Zankel v. United States,* 921 F.2d 432, 434–38 (2d Cir.1990). However, these cases are inapposite because this case does not involve a technical defect

---

**2.** DLJ maintains that there are several possible statutes of limitation which may apply to the AIG Action, which is for fraud, but that in any event the most generous one would be a six-year period that began running as of the dates of investment, which were all prior to March 1994. Under New York law, a fraud claim must be commenced within the longer of six years from the date the claim accrues, or two years from the date the injured party discovers or could have discovered the fraud with reasonable diligence. *See* N.Y.C.P.L.R. §§ 203(g), 213(8) (McKinney 2000). Based on a six-year statute of limitations, the time to file the AIG Action would have expired as of March 2000. The AIG Plaintiffs maintain that the statute of limitations has not run because it was tolled for approximately two and a half years by virtue of the class action litigation in *Primavera Familienstiftung v. Askin, et al,* 95 Civ. 8905, and *Montpellier Resources, Limited, et al v. Askin Capital Management, L.P., et al,* 97 Civ. 1856. The Court expresses no view at this juncture as to which statute of limitations applies.

in service but, rather, a failure to serve altogether.[3] Thus, whatever the nature of DLJ's beliefs and motivation, the AIG Plaintiffs lacked good cause for failing to effect service within the statutory period. *See Mason Tenders*, 1997 WL 221200, at *4.

### B. *A Discretionary Extension Is Warranted*

■ Although an extension of time is not mandatory in the absence of good cause, the Court may in its discretion extend the time to complete service. *See* Advisory Committee Notes to Fed.R.Civ.P. 4(m) (amended Rule 4(m) "authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown"); *Petrucelli v. Bohringer and Ratzinger*, 46 F.3d 1298, 1305 (3d Cir.1995); *Rupert v. Metro–North Commuter R.R. Co.*, No. 95 Civ. 4283, 1996 WL 447745, at *2 (S.D.N.Y. Aug. 7, 1996) (citing cases); *see also Henderson v. United States*, 517 U.S. 654, 658 n. 5, 116 S.Ct. 1638, 134 L.Ed.2d 880 (noting that current Rule 4(m) "permits a district court to enlarge the time for service 'even if there is no good cause shown.'") (quoting Rule 4(m)); *but see Mendez v. Elliot*, 45 F.3d 75, 79 (4th Cir.1995) (holding without reference to Advisory Committee Note that Rule 4(m) extension may be granted only for good cause).

■ The Advisory Committee Notes provide guidance as to when the court should exercise its discretion, stating that "relief may be justified, for example, if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service." Advisory Committee Notes to Fed. R.Civ.P. 4(m); *see Rupert*, 1996 WL 447745, at *2. The factors identified in the Advisory Committee Note are not exhaustive. *See*

Advisory Committee Notes to Fed.R.Civ.P. 4(m); *Petrucelli*, 46 F.3d at 1305–06.

DLJ contends that if the instant complaint is dismissed that the applicable statute of limitations will bar the AIG Plaintiffs from refiling. Thus, although a dismissal of a complaint pursuant to Rule 4(m) is without prejudice, such a dismissal would result in a *de facto* dismissal with prejudice. According to DLJ, the applicable statute of limitations arises under New York law and, under that law, expired at the very latest before March 2000. The AIG Plaintiffs do not concede that the statute of limitations has expired, but contend that, if it has, that fact militates in favor of granting a discretionary extension.

If the statute of limitations has not expired then a discretionary extension of time to serve would be warranted because no useful purpose would be served by dismissing the complaint. DLJ is already a defendant in the Consolidated Actions pending before this court. Presumably the only result of a dismissal would be that the AIG Plaintiffs would refile their complaint, resulting in a waste of judicial resources. *See In re Reliance Securities Litigation*, 91 F.Supp.2d 706, 719 (D.Del.2000) (granting discretionary extension to serve complaint where defendant was already party to related litigation before same court and dismissal would mean plaintiff would simply refile identical complaint). Therefore, it will be assumed *arguendo* that the statute of limitations has expired for purposes of determining whether a discretionary extension of time to serve DLJ is warranted.

Courts have consistently considered the fact that the statute of limitations has run on a plaintiff's claim as a factor favoring the plaintiff in a Rule 4(m) analysis. *See Boley v. Kaymark*, 123 F.3d 756, 759 (3d Cir.1997) (citing cases); *Rupert*, 1996 WL 447745, at *2. The rationale for this principle is that

---

3. The AIG Plaintiffs' argument that DLJ waived its right to object to the failure of service is rejected for similar reasons. The cases cited for this proposition are inapposite, in that they concern situations where service was technically defective, the defendant nonetheless took part in discovery, and then much later—even years later—moved to dismiss the complaint based on insufficient service or lack of personal jurisdiction. *See Zankel*, 921 F.2d at 434–38; *Datskow v.*

*Teledyne, Inc.*, 899 F.2d 1298, 1300, 1302–03 (2d Cir.1990); *Caruolo v. AC & S, Inc.*, No. 93 Civ. 3752, 1998 WL 633684 (S.D.N.Y.1998); *see also Santos v. State Farm Fire and Casualty Co.*, 902 F.2d 1092, 1095–96 (2d Cir.1990) (defendant answered complaint immediately and failed to inform plaintiff of defense counsel's lack of authorization to accept service, then moved to dismiss two years later for ineffective service).

dismissal under these circumstances would extinguish potentially meritorious claims without there being an opportunity to have them adjudicated on the merits. *See Mason Tenders,* 1997 WL 221200, at *5; *Rupert,* 1996 WL 447745, at *2. The language of the Advisory Committee Note does not, "[o]f course ... guarantee an extension for every case that may be time-barred if re-filed." *Rupert,* 1996 WL 447745, at *2 (internal citation and quotation marks omitted); *see Petrucelli,* 46 F.3d at 1306 ("[T]he running of the statute of limitations does not require the district court to extend time for service of process.").

The expiration of the statute of limitation, then, militates in favor of granting the AIG Plaintiffs' motion. DLJ avers, however, that the fact that dismissal is warranted because the fact that the statute of limitations has expired is not itself sufficient to warrant a discretionary extension of time under Rule 4(m), and because DLJ will be prejudiced.

DLJ's position that expiration of a statute of limitations may never be sufficient on its own is in tension with the language of the Advisory Committee Note. *See* Advisory Committee Note to Federal Rule of Civil Procedure 4(m) ("[Relief may be justified, for example, if the applicable statute of limitations would bar the refiled action ...."). In any case, the expiration of the statute of limitations is not the only circumstance weighing in favor of the AIG Plaintiffs' motion.

This action is part of a complex litigation in which six cases have effectively been litigated as one. The AIG Plaintiffs aver that it was precisely because the cases were being litigated together that it made it more difficult for them to realize their mistake. Although this does not mean they had a reasonable excuse for the failure, this fact weighs slightly in their favor.

More importantly, although DLJ by its own account took pains not to participate in those aspects of the Consolidated Actions which would have only pertained to the instant complaint as to DLJ, its conduct was not entirely consistent in this regard. For example, DLJ identified itself as a party in this case in a verified response to an interrogatory propounded in one of the related cases, *ABF Capital Management v. Askin Capital, et al.,* 96 Civ. 2978.[4] DLJ joined Kidder's motion for disclosure of the confidential Bear, Stearns settlement agreement, which included the AIG Plaintiffs. *See ABF Capital Management,* 2000 WL 191698, at *1. DLJ also initially joined in Kidder's motion for summary judgment against the plaintiffs in all of the Consolidated Cases, including this one, which position DLJ clarified only after having been finally served with the complaint in this action.[5]

Moreover, to the extent that DLJ relies on the fact that the AIG Plaintiffs had "no reasonable excuse," DLJ merely reiterates its argument as to why an extension is not required based on good cause. That, however, is a different question. *See Boley,* 123 F.3d at 758 ("That [the plaintiff's] delays were inexcusable, of course, merely reiterates the substance of the finding of no good cause and standing alone does not reflect an exercise of the discretion Rule 4(m) gives the court to extend time to serve in the absence of good cause.") (citation omitted).

4. DLJ responds that at the time it answered the interrogatory the 120–day period had not yet expired. This does not change the fact that, since it had not yet been served, based on the theory advanced by DLJ it was not yet a party and, in stating that it was, DLJ contributed to the AIG Plaintiffs' mistaken view that there was no problem on that front.

5. DLJ cites three cases in which district courts found that expiration of the statute of limitations was not a sufficient reason to grant a discretionary extension. In two of the cases, unlike here, the plaintiff offered no explanation whatsoever of its failure to serve the defendant. *See Astarita v. Urgo Butts & Co.,* No. 96 Civ. 6991, 1997 WL 317028, at *4–*5 (S.D.N.Y. June 10, 1997); *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Sun,* No. 93 Civ. 7170, 1994 WL 463009, at *3–*4 (S.D.N.Y. Aug. 25, 1994). All three cases involved significantly less complex litigation than here, and the defendant had not engaged in potentially confusing conduct. *See Astarita,* 1997 WL 317028, at *4–*5; *Bakal,* 1995 WL 447784, at *2–*3; *National Union Fire Ins.,* 1994 WL 463009, at *3–*4. DLJ also cites to *Petrucelli,* 46 F.3d at 1305–06, but that case simply stands for the proposition that expiration of the statute of limitations does not constitute good cause giving rise to a mandatory extension.

An important factor not specifically mentioned in the Advisory Committee Note, but which the courts have considered in determining whether to grant a discretionary extension, is prejudice to the defendant. *See, e.g., Boley v. Kaymark,* 123 F.3d 756, 759 (3d Cir.1997); *Mason Tenders,* 1997 WL 221200, at \*5; *Rupert,* 1996 WL 447745, at \*2. DLJ objects that it will be unduly prejudiced if the AIG Plaintiffs are allowed to proceed because this would require it "to defend a $40 million claim that is now time-barred without the benefit of the extensive discovery which has already been completed in this case." If DLJ is purporting to assert that not permitting it to take advantage of an expired statute of limitations is itself a form of prejudice, that contention is erroneous. "Interpreting this rule, under which the court may extend the time for service to avoid the bar of limitations, to authorize the court to refuse to extend it so the defendant may gain the benefit of that bar appears ... [would] be inconsistent with its purpose." *Boley,* 123 F.3d at 758 (citation omitted).

Certainly, however, delay in serving a defendant may impair its ability to defend against a claim on the merits. *See Gowan v. Teamsters Union (237),* 170 F.R.D. 356, 360 (S.D.N.Y.1997) (witness might be unavailable and evidence probably destroyed); *Shaw v. Rolex Watch U.S.A. Inc.,* 745 F.Supp. 982, 988 (S.D.N.Y.1990) (noting that named defendant died in the interim, though no ruling as to prejudice). DLJ asserts that it will be prejudiced because discovery has closed, so that among other problems it has never seen or met the witnesses the AIG Plaintiffs will call at trial, and the time for filing summary judgment motions in the Consolidated Cases has passed.[6]

The fact that DLJ had actual notice that an action was filed against it militates against a finding of prejudice since the "core function" of service is to supply notice "in a manner and at a time that afford the defendant a fair opportunity to answer the complaint and present defenses and objections." *Henderson,* 517 U.S. at 672, 116 S.Ct. 1638; *see Boley,* 123 F.3d at 759; *Myers,* 173 F.R.D. at 48. Of course, DLJ maintains that it believed that the AIG Plaintiffs did not intend to prosecute the complaint as to DLJ. If true, this would undermine the notion that it had notice. However, at the very least, DLJ were necessarily aware that there was a degree of uncertainty in the situation. As the Morgan Lewis counsel puts it, they felt it would be against their client's interests to "sound the alarm" on a $40 million claim by objecting to the lack of service. Thus, they recognized that the AIG Plaintiffs might in fact be intent on pursuing the claims against DLJ.[7] Thus, this is not a situation where DLJ was simply not on notice at all, weakening its claim of prejudice based on its lack of participation in discovery.

In addition, DLJ is not starting from a blank slate with respect to discovery. The AIG Plaintiffs point out that counsel for the broker-dealer defendants shared responsibility for discovery in the Montpellier and Johnston actions. Extensive discovery was conducted by DLJs co-defendants, Kidder and Bear Stearns, in this action. Thus, for example, the transcripts of the depositions of the AIG Plaintiffs taken by the other defendants are available for DLJ's review.[8] With respect to the plaintiffs' expert witnesses, DLJ actually attended those depositions.

Finally, steps can be taken to mitigate any prejudice to DLJ due to their lack of participation in the discovery phase of this action. For example, if they wish to pursue independent discovery in regard to this action, rather than relying solely on discovery obtained by their co-defendants, the Court will entertain a request to extend the discovery schedule specifically for this purpose. The Court

---

6. Several motions and cross-motions for summary judgment were filed in the Consolidated Cases in July and September, 2000. Those motions are fully submitted and are presently *sub judice.*

7. Morgan Lewis avers that this situation presented them with a "Hobson's choice." The situation is more aptly characterized as presenting a difficult strategic question, not different in kind from many strategic questions litigants confront.

8. If DLJ encounters any difficulty gaining access to these documents or other discovery obtained by its co-defendants, it may apply to the Court for relief.

will also entertain a request to extend the deadline for the filing of a summary judgment motion by DLJ in this case. It is unfortunate that this already complex and lengthy litigation may be protracted yet further. Under all the circumstances, however, a discretionary extension is warranted, and comports with the Second Circuit's clearly expressed preference that litigation disputes be resolved on the merits. *See Mejia v. Castle Hotel, Inc.*, 164 F.R.D. 343, 345 (S.D.N.Y.1996); *Cody v. Mello*, 59 F.3d 13, 15 (2d Cir.1995).

Because the AIG Plaintiffs' motion will be granted, the DLJ's motion to dismiss is moot to the extent that it contends that the AIG Plaintiffs, if forced to refile, would be barred from proceeding based on a six-year statute of limitations expiring as of March 2000. DLJ also raises the argument that a two-year statute of limitations applies, however, in which case this action would appear to be barred even based on October 22, 1998 filing date.[9] The Court having reached no conclusion herein as to what in fact is the applicable statute of limitations period, DLJ has leave to resubmit a statute of limitations defense, either in connection with a 12(b)(6) motion or a motion for summary judgment.

### Conclusion

Therefore, for the reasons set forth above, the AIG Plaintiffs' motion is granted and DLJ's motion is denied.

It is so ordered.

---

9. DLJ also references an argument that the applicable statute of limitations might be that of another state, under New York's borrowing statute. *See* N.Y.C.P.L.R. § 202 (McKinney 2000).