**In re TELIGENT SERVICES, INC., et al., Debtors.**

Savage & Associates, P.C. as the Unsecured Claim Estate Plaintiff for and On behalf of Teligent, Inc., et al., Plaintiff,

v.

Williams Communications, Defendant.

Bankruptcy No. 01–12974(SMB).
Adversary No. 03–03378(ALG).

United States Bankruptcy Court, S.D. New York.

May 13, 2005.

Savage & Associates, P.C. (Denise L. Savage, Esq., Michael K. Gertzer, Esq. of Counsel), White Plains, NY, for Plaintiff.

Kelley Drye & Warren, LLP (James S. Carr, Esq., Robert L. Lehane, Esq. of Counsel), New York, NY, Conner & Winters, LLP (Andrew R. Turner, Esq., Heather Hold Bilderback, Esq. of Counsel), Tulsa, OK, for WilTel Communications, LLC.

Willkie Farr & Gallagher, LLP (Brian E. O'Connor, Esq.), New York, NY, for NextiraOne, LLC.

### MEMORANDUM OF OPINION

ALLAN L. GROPPER, Bankruptcy Judge.

### FACTS

On May 21, 2001 (the "Petition Date"), Teligent Services, Inc. and its affiliates filed for relief under Chapter 11 of the Bankruptcy Code. The Debtors' Joint Plan of Reorganization (the "Plan") was confirmed on September 6, 2002. Pursuant to the Plan, Savage & Associates, P.C. ("Plaintiff") was appointed as the Unsecured Claims Estate Representative of the Debtors. Plaintiff was authorized to investigate and pursue preference actions and has brought more than a thousand such actions against various defendants.

In the action at issue herein, on May 14, 2003, Plaintiff filed a timely complaint (the "Complaint") alleging that on or within 90 days prior to the Petition Date, one of the Debtors issued three checks to the order

of "Williams Communications" and two checks to the order of "Williams Communications Solutions" (together, the "Transfers"). Plaintiff named "Williams Communications" as defendant in the Complaint and sought recovery of the Transfers in the aggregate sum of $313,180.89.

On July 7, 2003, Plaintiff timely served the Complaint upon NextiraOne, LLC ("Nextira"). Nextira is a limited liability company that was formerly known as Williams Communications Solutions, LLC and was owned by Williams Communications, LLC. Effective March 31, 2001, Williams Communications, LLC sold Nextira to a third party and its name change was effected. Some time later, Williams Communications, LLC changed its name to WilTel Communications, LLC ("WilTel"), and it is the proponent of the motions that are the subject of this Opinion.

It appears that the checks that were variously payable to "Williams Communications" and "Williams Communications Solutions" were all written at or about the time that Nextira was sold by WilTel. Plaintiff has averred, and it appears from the record, that all of the checks were deposited without an endorsement or with an endorsement that did not make it clear which "Williams" company negotiated the check or received the funds. In any event, Plaintiff served Nextira, formerly Williams Communications Solutions LLC, with the summons and complaint. Shortly thereafter, Nextira's counsel, Jeffrey Carbino of the firm of Willkie Farr & Gallagher ("Carbino"), contacted Plaintiff and denied that Nextira had received the Transfers.

At or about the same period of time— August 2003 or within 60 days of service of the summons and complaint on Nextira— Plaintiff was prosecuting the many other preference actions it had commenced. It appears that Plaintiff had brought another avoidance action against WilTel (formerly Williams Communications LLC) seeking recovery of preferences in the amount of $604,824.00. In connection with that separate complaint, WilTel was charged with receipt of checks issued by the Debtors to the order of WilTel but received and deposited by MCI/Worldcom, Inc. (It appears that MCI/Worldcom had operated under the name "WilTel" prior to January, 2003, when Williams Communications, LLC began using the name.) Andrew Turner ("Turner"), WilTel's counsel, had one or more communications with Plaintiff's claims agent, Denise Savage, in August and September 2003 during which Turner attempted to persuade Savage that WilTel had not received the MCI/Worldcom transfers. At that time Turner apparently explained certain of the history related to the use of the "Williams" name. In a contemporaneous e-mail, Plaintiff's counsel, Denise Savage (who knew that Nextira's counsel had denied that Nextira had received the Transfers at issue in this case), also recognized that there might be another outstanding "Williams" issue. She expressed her uncertainty as to the identity of the correct defendant in the present case in an e-mail communication to Turner, dated September 2, 2003, stating, "I'm way too confused at this point to dismiss any action relating to Williams. I have to have the right to claim against one of these entities and I am going to have to figure this out first."

Plaintiff's case against WilTel relating to the MCI/Worldcom transfers was dismissed in December 2003, after mandatory mediation, when Plaintiff conceded that MCI/Worldcom, not WilTel, received the Transfers. Plaintiff continued, however, to pursue Nextira with respect to the Transfers at issue here. But that pursuit was slow. After some document production, over a year later, on September 27, 2004, Plaintiff conducted the deposition of George Vareldzis, Vice President of Finance Administration for Nextira. Vareld-

zis denied that Nextira had received the Transfers at issue, and some time later Nextira followed up with a massive motion for summary judgment. With equally massive papers Plaintiff opposed the motion, picking apart Nextira's papers and asserting that there were issues of fact that precluded the grant of summary judgment to Nextira.[1]

On October 22, 2004, some seventeen months after Plaintiff first filed the Complaint, over a year after Plaintiff concluded she was "going to have to figure this out", and during the pendency of Nextira's motion for summary judgment, Plaintiff obtained a second summons from the Clerk of the Court in this adversary proceeding and served it, along with the Complaint, upon WilTel. In response, on November 22, 2004, WilTel moved to dismiss the Complaint pursuant to Fed.R.Civ.P. 4(m) and 12(b)(4), made applicable by Bankr.R. 7004(a) and 7012(b) respectively, alleging that service was untimely.[2]

On December 15, 2004, Plaintiff then moved to amend the Complaint to name WilTel as a defendant under Fed.R.Civ.P. 15(c) and Bankruptcy Rule 7015, alleging that the claims against WilTel should relate back to the date of the original complaint. Plaintiff alleges, *inter alia*, that WilTel had actual notice of the Complaint within the 120–day period provided under Rule 4(m) and that there would be no prejudice as a result of the Complaint's amendment. WilTel asserts in response that it would be severely prejudiced in maintaining a defense on the merits of the case because it did not have earlier notice of the allegations in this adversary proceeding.

For the reasons stated below, WilTel's motion to dismiss under Rule 4(m) is granted and Plaintiff's motion to amend is denied.

## DISCUSSION

I. *WilTel's Motion to Dismiss for Insufficiency of Process Pursuant to Rule 4(m)*

■ Federal Rule of Civil Procedure 4(m), made applicable to this adversary proceeding by Bankruptcy Rule 7004(a), provides in pertinent part:

[If] service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m). Rule 4(m) thus requires the Court to extend the time for service for an appropriate period if the plaintiff can demonstrate good cause for

---

1. The Court reserved decision on Nextira's summary judgment motion pending a hearing on the WilTel motions being decided herewith.

2. WilTel moves pursuant to Rule 12(b)(4) to dismiss the Complaint. However, an objection under Rule 12(b)(4) is proper only to challenge noncompliance with the provisions of Rule 4(b) or any applicable provision incorporated by Rule 4(b) that deals specifically with content of the summons. See 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1353 (3d ed. 2004) ("Other than those cases in which it is confused with a motion under Rule 12(b)(5), a motion under Rule 12(b)(4) is fairly rare."). The substance of WilTel's motion arises under Rule 12(b)(5), which is the proper provision for challenging the mode of delivery or the lack of delivery of the summons and complaint. The citation to the wrong subsection of Rule 12, however, has not resulted in any damage to Plaintiff and the motion papers will be deemed corrected.

its failure to timely effect service, and we first consider whether Plaintiff can show good cause for failure to serve WilTel until seventeen months after the filing of the Complaint.

### A. Good Cause

A plaintiff bears the burden of proving good cause for its failure to timely serve a defendant. Fed.R.Civ.P. 4(m); see also, *AIG Managed Market Neutral Fund v. Askin Capital Mgmt., L.P.*, 197 F.R.D. 104, 108 (S.D.N.Y.2000). As a general rule, good cause is measured against "(1) the plaintiff's reasonable efforts to effect service and (2) the prejudice to the defendant from delay." *In re Motel 6 Sec. Litig.*, 1995 WL 649930, at *1 (S.D.N.Y. Nov.6, 1995), quoting *Nat'l Union Fire Ins. Co. v. Barney Assocs.*, 130 F.R.D. 291, 293 (S.D.N.Y.1990). Courts consider various factors in measuring a plaintiff's diligence in attempting to effect service of process. One factor is whether the plaintiff moved under Rule 6(b) for an extension of time to effect service of process on the defendant. Fed.R.Civ.P. 6(b); see also, *AIG Managed Market*, 197 F.R.D. at 108, quoting *Gordon v. Hunt*, 835 F.2d 452, 453 (2d Cir.1987). No such motion was made in this case. Another factor is whether the plaintiff made reasonable efforts to effect personal service by various methods. *In re Motel 6 Sec. Litig.*, 1995 WL 649930, at *1, quoting *Eng v. Scully*, 1989 WL 63035, at *1–2 (S.D.N.Y. June 2, 1989). In this regard, courts have stated that a delay in effecting proper service of process on a defendant resulting from the mere inadvertence, neglect, or mistake of a litigant's attorney does not constitute good cause. See, e.g., *Myers v. Sec'y of the Dep't of the Treasury*, 173 F.R.D. 44, 47 (E.D.N.Y.1997). Similarly, courts have declined to grant an extension when litigants fail to make even the most basic efforts to effectuate service on a party during the 120–day period provided for under Rule 4(m). *Nat'l Union Fire Ins. Co. v. Sun*, 1994 WL 463009, at *4 (S.D.N.Y. Aug.25, 1994). However, good cause under Rule 4(m) is construed "to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice." *In re Motel 6 Sec. Litig.*, 1995 WL 649930, at *1, quoting *Romandette v. Weetabix Co.*, 807 F.2d 309, 311 (2d Cir.1986).

In the case at bar, Plaintiff can show cause for initial confusion as to the proper Williams defendant and for some initial delay in making service on WilTel. Beyond that, Plaintiff does not have a convincing explanation for the year-long delay between the realization that there was an issue "that had to be figured out" and service on WilTel. Nextira had denied that it was the transferee. Plaintiff knew that WilTel was another "Williams" company that might as well be the proper defendant. Plaintiff states that service was made on WilTel as soon as it was learned that Nextira might not be the proper defendant, that Nextira withheld the identity of WilTel as a defendant and that the facts were learned only through the Vareldzis Deposition. (Pl. Obj. to Motion to Dismiss at 10.) These claims are inconsistent with the record. Thus the record contains the Plaintiff's email with WilTel's counsel more than a full year before any effort was made to bring WilTel into the lawsuit in which a problem was recognized.

There is no showing that WilTel misled Plaintiff to believe that Nextira—and not WilTel itself—was the correct defendant. The sections of the e-mail communication referred to by Plaintiff as evidence of WilTel's efforts to implicate Nextira as the correct defendant consist of information explaining the corporate history of Nextira and WilTel and their separate identities. No misrepresentation was made.

In any event, even where a party has actually withheld the identity of other defendants until after the statute of limitations has run, courts weigh several factors to determine whether this conduct constitutes cause for the extension of the time to serve under Rule 4(m): (1) whether plaintiff made diligent efforts to identify the other defendants; (2) whether information regarding the other defendants could only have been obtained from the first defendant; (3) whether plaintiff sought to discover the identity of a known defendant; and (4) whether defendants shared common counsel. *Yanez v. Columbia Coastal Transport, Inc.*, 68 F.Supp.2d 489, 494 (D.N.J.1999); *Byrd v. Abate*, 964 F.Supp. 140 (S.D.N.Y.1997).

In the instant case, these factors do not help the Plaintiff's case. Plaintiff did not make diligent efforts to identify or to follow up what it knew regarding other possible recipients of the Transfers. In addition, Plaintiff fails to argue that knowledge of WilTel's role in the preferential transaction could have only been obtained from Nextira. Plaintiff already knew the identity of WilTel from another preference case that had been brought, and Nextira repeatedly denied receipt of the Transfers throughout the adversary proceeding. Plaintiff had doubts whether Nextira was the true defendant within the 120–day period provided under Rule 4(m), as shown by the e-mail communication between Savage and Turner, dated September 2, 2003. Nevertheless, Plaintiff continued litigating against Nextira, waiting thirteen months after the 120–day period under Rule 4(m) expired to finally serve WilTel. "Where it is apparent that an attorney's ignorance, inadvertence, or 'misplaced reliance' promulgated the failure to serve process, courts have shown no leniency." *Nat'l Union Fire Ins. Co.*, 1994 WL 463009, at *3.[3]

Based on the foregoing, this Court concludes that Plaintiff failed to make reasonable efforts to identify and effect service upon WilTel and, therefore, has failed to show good cause for the extended delay.

*B. Court Discretion*

■ Even if a plaintiff fails to show good cause for an extension of time to serve a defendant, the court may in its discretion extend the time to effect service. See, e.g., *Henderson v. United States*, 517 U.S. 654, 658 n. 5, 116 S.Ct. 1638, 134 L.Ed.2d 880 (noting that current Rule 4(m) "permits a district court to enlarge the time for service 'even if there is no good cause shown'"); *Husowitz v. Am. Postal Workers Union*, 190 F.R.D. 53, 57 (E.D.N.Y.1999); Advisory Committee Notes to Fed.R.Civ.P. 4(m) (amended Rule 4(m) authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown). In *Feingold v. Hankin*, 269 F.Supp.2d 268, 277 (S.D.N.Y. 2003), the Court applied a four-factor test to govern the exercise of this discretion:

> "In exercising this discretion, courts consider 1) whether the statute of limitations would bar a re-filed action, 2) whether the defendant attempted to conceal the defect in service, 3) whether the defendant would be prejudiced by excusing the plaintiff from the time constraints of the provision, and 4) whether the defendant had actual notice of the claims asserted in the complaint."

269 F.Supp.2d at 277.

■ In exercising their discretion, courts give particular weight to the first factor, whether the statute of limitations has already run, and to the third factor, prejudice to the defendant. *Harley v. City of Phila.*, 1997 WL 363884, at *2 (E.D.Pa.

---

**3.** As to the fourth factor, Nextira and WilTel did not and do not share a common counsel.

June 12, 1997). The reason for the importance accorded to the limitations factor is obvious. Even though the language of the statute indicates that dismissal based on Rule 4(m) is "without prejudice," dismissal where the statute of limitations has expired effectively functions as a dismissal with prejudice. *McGregor v. United States,* 933 F.2d 156, 159, 161 (2d Cir. 1991); *Sunniland Fruit Co., Inc. v. PMI Produce Corp.,* 2001 WL 761174, at *3 (S.D.N.Y. July 6, 2001). However, case law indicates that expiration of the statute of limitations does not require a court to use its discretion to grant an extension of time for service in every time-barred case. See *Knorr v. Coughlin,* 159 F.R.D. 5, 7 (N.D.N.Y.1994) ("the fact that dismissal will impact the statute of limitations does not compel the court to excuse the violation"); *Nat'l Union Fire Ins. Co.,* 1994 WL 463009, at *4 ("For though leniency may sometimes be appropriate for those who have in good faith attempted timely service, to afford it to litigants who have failed to make even the most basic efforts would turn Rule 4(m) into a toothless tiger."); *Nobriga v. Dalton,* 1996 WL 294354, at *3 (E.D.N.Y. May 28, 1996) (refusing to exercise discretion under Rule 4(m) to extend time for filing absent compelling circumstances).

 In the case at bar, the statute of limitations for commencing a preference action has apparently expired. Plaintiff asserts that the action is otherwise time-barred and that the estate will be severely prejudiced if the Court dismisses the Complaint as to WilTel. On the other hand, the prejudice to the Plaintiff is countered by the presence of the other factor that courts weigh most heavily in the exercise of their discretion—prejudice to the defen-

dant. See *Gowan v. Teamsters Union,* 170 F.R.D. 356, 360 (S.D.N.Y.1997) (refusing to grant extension of time to effectuate service upon defendant where plaintiff offered no excuse for his failure to effect timely service, did not request an extension of time until one week after the 120-day period had expired, and the defendant demonstrated likelihood of prejudice). The record demonstrates that the thirteen-month delay in service has prejudiced Wil-Tel. WilTel has credibly shown that prior to and during the delay in service, several employees who worked on the transactions between Teligent and WilTel left the company, and that the loss of such personnel will likely impede WilTel's ability to defend the adversary proceeding.[4]

Plaintiff asserts that the prejudice issue is moot in light of the fact that WilTel had actual notice of the action within the 120-day period for making service under Rule 4(m). The question whether a defendant had "actual notice" of the Complaint is one of the four factors governing the exercise of discretion to excuse a defect in service of process, and it is a mitigating factor in a plaintiff's favor.[5] *In re Initial Pub. Offering Sec. Litig.,* 358 F.Supp.2d 189, 208–09 (S.D.N.Y.2004); see also, *Cody v. Mello,* 59 F.3d 13, 15 (2d Cir.1995). Actual notice of an action militates against a finding of prejudice since the "core function" of service is to supply notice "in a manner and at a time that affords the defendant a fair opportunity to answer the complaint and present defenses and objections." *AIG Managed Mkt.,* 197 F.R.D. at 111, quoting *Henderson v. United States,* 517 U.S. at 672, 116 S.Ct. 1638. On the other hand, courts have repeatedly held that "actual notice of the action will not, in itself, cure an otherwise defective service." *Omni*

---

**4.** The defendant in a preference case bears the burden of establishing most defenses, including that the transaction was in the ordinary course of business.

**5.** As shown below, "actual notice" is also an important factor in a motion to amend to add another defendant under Fed.R.Civ.P. 15(c).

*Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987); *Am. Inst. of Certified Pub. Accts. v. Affinity Card, Inc.*, 8 F.Supp.2d 372, 377 (S.D.N.Y.1998). Moreover, actual notice requires defendants to have clear knowledge that an action has been brought against them. *IPO Sec. Litig.*, 358 F.Supp.2d 189, 209–10 (defendants had actual notice of the related allegations from the outset of the litigation and actively participated in the action); *Hein v. Cuprum, S.A. de CV.*, 136 F.Supp.2d 63, 65 (N.D.N.Y.2001) (defendant alleged defective service, but the court found actual notice where she actively litigated and defended the matter over a period of two years); *Alston v. Quik Park Garage Corp.*, 1996 WL 547018, at *1 (S.D.N.Y. Sept.26, 1996) (summons and complaint had defendant's name misspelled; however, defendant requested three extensions to answer the complaint and engaged in settlement negotiations with plaintiff. The court found the misspelling a "harmless error.").

For the proposition that WilTel had "actual notice" of the Complaint, Plaintiff points to the communications in August 2003 with Turner. In those communications, according to Plaintiff, Turner indicated that Nextira was the correct defendant and pointed Teligent towards Nextira and away from itself. (Pl.'s Mot. to Amend at 6). A careful review of the record indicates, however, that the instant case was not discussed in sufficient detail so as to provide "actual notice of the action" against WilTel. Nor does the record show that WilTel's lawyer, Turner, told Plaintiff's counsel that Nextira or anyone else was the correct defendant. Plaintiff

points to the fact that after speaking with Plaintiff's counsel, Turner thereafter contacted Carbino, Nextira's counsel. Plaintiff says they "must have" discussed the claim underlying the current action, and that Turner, therefore, "must have" acquired actual notice of the action. However, Turner denies having engaged in any substantive discussions about the action with Carbino (Affidavit of Turner ¶¶ 5–6), and Plaintiff has failed to provide any evidence otherwise. Turner knew that other adversary proceedings had been brought by Plaintiff, but the record does not show that he had information that the Transfers at issue here were being challenged. Under the circumstances, knowledge of the existence of a possible issue, with no follow up for over a year, does not constitute notice, and Plaintiff has failed to show that either WilTel or WilTel's counsel had notice of the current action within the 120–day period provided under Rule 4(m). See *Henderson v. United States*, 517 U.S. at 672, 116 S.Ct. 1638.

Although the events of August 2003 did not provide WilTel with actual notice that there was in fact a pending lawsuit naming it as a defendant, the course of events of that month did provide Plaintiff with actual notice that there was an issue that had to be dealt with immediately. Plaintiff knew that the party served, Nextira, had denied receipt of the Transfers at issue. Plaintiff knew that there was another company that did business under the "Williams" name.[6] Plaintiff could have sent Turner a copy of the complaint formally or informally, thereby providing "actual notice" of the action and presumably eliciting a response.[7] Instead, Plaintiff liti-

---

**6.** In an email message to Nextira's counsel on August 26, 2003, Plaintiff's counsel stated: "The case cannot be dismissed as I will lose the statute of limitations. We will just endeavor to find the right company ... I will merely serve the correct party named in the

complaint ...". (Ex. 5 to Callari Decl. in Supp. of Nextira's Mot. for Summ. J.)

**7.** If WilTel had refused to respond to an inquiry, counsel could have either pursued the matter formally or assumed that WilTel was the proper defendant. WilTel's counsel forth-

gated with Nextira for more than a year and made no effort to pursue WilTel until Nextira had filed a massive motion for summary judgment, asserting that it was not the transferee. Even then Plaintiff did not concede. Even as Plaintiff was attempting to serve WilTel as a possible defendant, counsel filed a lengthy memorandum with eleven exhibits challenging Nextira's case and asserting that there was a question of fact as to Nextira's receipt of the checks at issue.[8]

The Bankruptcy Rules must "be construed to secure the just, speedy, and inexpensive determination of every case and proceeding." Bankruptcy Rule 1001. The Court recognizes the problem faced by a post-confirmation liquidation trustee whose records may not show conclusively the identity of the recipient of a possible preference. Mistakes may be made, especially where more than a thousand actions are filed in a short period of time. But even in such circumstances—arguably, especially in such circumstances—the liquidation trustee must be alert to the "just, speedy and inexpensive" correction of mistakes. This is especially true because the preference defendant has done no wrong. *Van Iderstine v. Nat'l Disc. Co.*, 227 U.S. 575, 582, 33 S.Ct. 343, 57 L.Ed. 652 (1913). At worst, the defendant received payment of a legitimate debt and will end up a creditor of the estate being administered.

Instead of an effort to correct a known possible mistake, Plaintiff continued to pursue the wrong party for more than a year, failed to provide the right party, whose identity Plaintiff had reason to suspect, with actual notice of the Complaint and prejudiced that party in its ability to defend itself and prove facts as to which it bears the burden of proof. There is no basis under these circumstances to exercise discretion in the Plaintiff's favor, and the motion to dismiss under Rule 4(m) should be granted, without prejudice, as provided in the Rules.

## II. *Plaintiff's Motion to Amend the Complaint Pursuant to Rule 15(c)*

Plaintiff has also moved to amend the Complaint to add WilTel as a defendant or to correct the caption to specify WilTel as the defendant. The only issue is whether the claims against WilTel would relate back, under Fed.R.Civ.P. 15(c), made applicable by Bankruptcy Rule 7015, to the date of the original pleading. Rule 15(c) provides in pertinent part:

(c) Relation Back of Amendments. An amendment of a pleading relates back to the date of the original pleading when

. . .

(2) The claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

(3) The amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party

rightly conceded during oral argument on these motions that his client was in fact the recipient of the challenged Transfers.

**8.** The Court has held the Nextira motion for summary judgment in abeyance pending the determination of these motions relating to

WilTel. In light of the fact that WilTel's counsel made an explicit admission, in open court and in the presence of Plaintiff's counsel, that WilTel was the recipient of the challenged Transfers, there can be no dispute that Nextira is entitled to summary judgment dismissing the complaint as against it.

will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed.R.Civ.P. 15(c).

 "Rule 15(c) is the only vehicle to add a new party after the statute of limitations has run." *Korn v. Royal Caribbean Cruise Line, Inc.,* 724 F.2d 1397, 1399 (9th Cir.1984); *In re Randall's Island Family Golf Ctrs. v. Acushnet Co.,* 2002 WL 31496229, at *2 (Bankr.S.D.N.Y. Nov.8, 2002). Its purpose is "to prevent parties against whom claims are made from taking unjust advantage of otherwise inconsequential pleading errors to sustain a limitations defense." *Advanced Magnetics, Inc., v. Bayfront Partners, Inc.,* 106 F.3d 11, 19 (2d Cir.1997). The party seeking to have the claim relate back bears the burden of proof and must show the following: (1) both claims arose out of the same transaction or occurrence; (2) the new party received adequate notice of the plaintiff's claims, within the time limits specified in Fed.R.Civ.P. 4(m), and will not be prejudiced by the amendment; (3) the new party knew or should have known that but for a mistake concerning its identity, the new party would have been named in the earlier, timely pleading; and (4) the second and third factors must be satisfied within the prescribed limitations period. *Schiavone v. Fortune,* 477 U.S. 21, 29, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986); *Childs v. City of Phila.,* 2000 WL 567240, at *3 (E.D.Pa. May 9, 2000).

 In the case at bar, the parties do not dispute that Plaintiff has satisfied the first requirement. However, the second, third and fourth requirements are at issue.

### A. Adequate Notice to the New Party

Fed.R.Civ.P. 15(c) provides that the new party must have received, within the period for effective service provided by Rule 4(m), such notice of the action that it will not be prejudiced in maintaining a defense. The issues regarding notice as they pertain to a motion to amend are similar to those discussed above with respect to relief from the requirements of Rule 4(m). Plaintiff alleges: (1) WilTel knew the nature and all of the relevant information surrounding the Teligent adversary proceedings by being a named defendant in another avoidance action brought by Teligent and by the email correspondence with Plaintiff's counsel, and (2) WilTel's counsel "must have" discussed substantive claims in his telephone calls with Nextira's counsel, Carbino. As discussed above, the record does not support a finding that WilTel received notice of the instant suit.

Plaintiff cites several cases in support of her position on notice, but they are distinguishable. In *Phillips v. United Fixtures Co.,* 168 F.R.D. 183, 186 (W.D.Va.1996), the newly added defendant received actual informal notice of the action through a crossclaim filed against it by the original defendant. In the current case, the record does not indicate that WilTel was served with any pleadings from any party to this action prior to October 21, 2004. Plaintiff also cites *Blaskiewicz v. County of Suffolk,* 29 F.Supp.2d 134, 138–39 (E.D.N.Y.1998). There, the court permitted a *pro se* inmate to amend a complaint to add individual corrections officers where the plaintiff initially alleged claims against the county and its "agents, employees and servants," and did not learn the identities of the individual defendants until later. The court stated that a potential party may receive notice through "informal means," and that since the individual officers were all employees of Suffolk County, they received "constructive notice" of the action through the county attorney. *Id.* By contrast, in the case at bar, Nextira and WilTel are separate enti-

ties, and they do not share common counsel.

In another case cited by Plaintiff, the court stated that even though notice does not require actual service of process, the notice must be "sufficient to dispel any prejudice to a defense on the merits of the claim." *Lockwood v. City of Phila.*, 205 F.R.D. 448, 451 (E.D.Pa.2002). Likewise, in *In re Integrated Res. Real Estate Ltd. P'ships Sec. Litig.*, 815 F.Supp. 620, 647 (S.D.N.Y.1993), the court said "[t]he notice has to be such that the new defendant must be able to anticipate and therefore prepare for his role as a defendant". It continued:

> A firm or an individual may receive notice that the lawsuit exists ... without recognizing itself as the proper defendant and so without knowledge that it would be sued, just as a firm or individual may be the proper party without receiving any notice at all. The former is as thoroughly barred by Rule 15(c) as the latter.

*Id.* at 648. For the reasons stated above with respect to the Rule 4(m) motion, notice to WilTel during the Rule 4(m) period was not sufficient, WilTel has shown prejudice on account of the delay in service, and Plaintiff has not satisfied the relevant requirements of Fed.R.Civ.P. 15(c).

### B. Knowledge by the New Party that a Mistake Had Been Made

Even if a plaintiff is able to show adequate notice, Rule 15(c)(3) can only be satisfied if WilTel knew or should have known that the Plaintiff's failure to name it in a timely pleading was the result of a "mistake." Fed.R.Civ.P. 15(c).

In the present case it appears from the record that the Plaintiff made a mistake in the identity of the correct party to be served as the recipient of the "Williams" transfers at issue. See *Barrow v. Wethersfield Police Dept.*, 66 F.3d 466, 469 (2d Cir.1995), *modified*, 74 F.3d 1366 (2d Cir.

1996). But there is no indication that WilTel or its counsel knew that a mistake had been made, and that but for that mistake, WilTel would have been named and/or served as a defendant. At most, WilTel knew that there were other challenged transfers relating to payments to a "Williams" entity. This did not put WilTel on notice of a lawsuit challenging the specific Transfers at issue in this case. WilTel could not surmise from the information it had that a mistake had been made, and it certainly could not conclude that it was the correct defendant in respect of payments that were never identified until WilTel was sent the Complaint thirteen months after the Rule 4(m) period had lapsed.

Plaintiff could easily have alerted WilTel to the specifics of the challenged transactions by sending WilTel or its counsel a copy of the Complaint—in which case WilTel would have been on notice of a need to prepare a defense. Plaintiff did not do so for more than a year and is not entitled at this late date to amend the Complaint, identify WilTel as the proper defendant, and have the amendment relate back under Rule 15(c).

### CONCLUSION

For the reasons stated above, WilTel's Motion to Dismiss pursuant to Rule 4(m) is granted and Teligent's Motion to Amend its Complaint pursuant to Rule 15(c) is denied. WilTel may settle an order on five days' notice. In addition, based on the record (see note 8, above), Nextira may settle an order on five days' notice granting its motion for summary judgment dismissing the Complaint as against it.